# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Newport News Division)

In re                                    :
                                         :
    MARLENE DENISE EVANS          :    Civil No. 4:16-cv-00017-RGD/RJK
                                         :
    Debtor.                      :
_____:
                                         :
MARLENE DENISE EVANS                     :
                                         :    On appeal from
    Appellant,                   :
                                         :    Bankruptcy Case No. 11-51101-SCS
v.                                       :
                                         :
R. CLINTON STACKHOUSE, JR., Trustee,:
                                         :
    Appellee.                    :
_____:

## BRIEF OF APPELLANT

Jessica R. Casey, VSB #77849
jessica@caseylegalpc.com
Casey Legal, P.C.
11828 Canon Boulevard, Suite A
Newport News, Virginia 23606
(757) 596-0456
(757) 596-2999 [facsimile]
Counsel for the Debtor/Appellant

TABLE OF CONTENTS

Table of Contents..................................................................................................1

Table of Cases, Statutes and Other Authorities.................................................2

Statement of the Basis of Appellate Jurisdiction...............................................3

Issues Presented..................................................................................................3

Standard of Review.............................................................................................3

Statement of the Case.........................................................................................3

ARGUMENT:

I. DIRECT PAYMENTS TO A MORTGAGE LENDER ARE NOT PAYMENTS
UNDER THE PLAN...........................................................................................5

    *The terms "payments under the plan" and "provided for by the plan" are clearly
    defined differently*..........................................................................................6

    *A review of other sections of title 11 reveal that "payments under the plan" are
    not inclusive of direct payments*.....................................................................7

    *A Term Used in Different Parts of the Same Statute Has the Same Meaning*.......11

II. THE COURT MAY NOT USE A NEWLY ENACTED RULE TO CHANGE A THE
WELL ESTABLISHED INTERPRETATION OF A SECTION OF THE CODE
..........................................................................................................................13

III.  INTERPRETING PAYMENTS UNDER THE PLAN TO MEAN DIRECT
PAYMENTS CAUSES A RESULT THAT IS IN DIRECT CONTRAVENTION OF
THE INTENT OF THE CURRENT BANKRUPTCY CODE..................................15

    *BAPCPA's Intent Was to Decrease Repeat Filings*..............................................15

    *The Chapter 13 Discharge is Becoming More Narrow Than the Chapter 7
    Discharge, When the Code Clearly Aims to Do The Opposite*..........................16

CONCLUSION...................................................................................................17

TABLE OF AUTHORITIES

**Cases**

*In re Evans*, 543 B.R. 213 (Bankr. E.D. Va. 2016)....................................................5

*Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)....................................................5

*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)....................................5

*Rake v. Wade*, 508 U.S. 464 (1993)....................................................6

*In re Russell*, 458 B.R. 731 (Bankr. E.D. Va. 2010)....................................................8

*In re Griffin*, 352 B.R. 475, 478 (2006)....................................................9

*Corley v. United States,* 556 U.S. 303, 314 (2009)....................................................10

*In re Estrada*, 322 B.R. 149 (Bankr. E.D. Cal., 2005)....................................................13, 14

*Foster v. Heintcampf (In re Foster)*, 670 F.2d 478 (5th Cir. 1982)....................................................14

*In re Kessler*, 2015 Bankr. LEXIS 1889 (Bankr. N.D. Tex. June 9, 2015)....................................................14

**Constitution, Statues and Rules**

28 U.S.C. §§ 1334(a)....................................................3

28 U.S.C. § 158(a)(1)....................................................3

28 U.S.C. § 157....................................................3

11 U.S.C § 1328....................................................3, 6, 11, 12, 13, 14, 15, 16

11 U.S.C. § 1322....................................................4, 6, 7, 8, 10, 11, 13, 16

11 U.S.C. § 727(a)(9)....................................................8, 9

11 U.S.C. §1329(a)(4)....................................................9

11 U.S.C. §1326....................................................11

11 U.S.C §1302 (repealed)....................................................14

11 U.S.C. §523....................................................16

Fed. R. Bankr. P. 3002.1....................................................4, 10, 13, 14

Statement of the Basis of Appellate Jurisdiction

This is an appeal from a final order of the Bankruptcy Court dismissing the case for failure to pay post-filing direct payments [Docket #86].  The Order was entered on March 7, 2016, and the Notice of Appeal was timely filed on March 21, 2016 [Docket #89].  The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 1334(a) and 157.  Dismissal of a case is a core proceeding over which the Bankruptcy Court had jurisdiction under 28 U.S.C § 157(b)(2)(A).  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

Issues Presented

The question presented on appeal is whether payments made by a debtor directly to a mortgage company are excluded when determining how the term payments "under the plan" is defined, especially in reference to 11 U.S.C. § 1328(a).

Standard of Review

The facts in this case were undisputed and thus this appeal involves a pure question of law.  Accordingly, this review is *de novo*.

Statement of the Case

The Debtor, Marlene Denise Evans, filed a voluntary petition under Chapter 13 of the U.S. Bankruptcy Code on June 11, 2010 and her plan was timely filed on June 16, 2010, which was confirmed on November 29, 2010.  After a change in circumstances, the Debtor filed an amended plan and schedules on September 26, 2014.  Said plan was

confirmed on November 14, 2014.  The plan provided for plan payments that totaled $24,675.00.  In section 5A of the plan, and in accordance with 11 U.S.C. § 1322(b)(5), the debtor proposed to make payments directly to CitiFinancial, Inc. (the "Lender") in accordance with the Deed of Trust and Note she originally signed, which gives the Lender a lien on her real property located at 38 Corwin Circle, Hampton, VA.  In addition, in section 5A, in accordance with 11 U.S.C. § 1322(b)(5), the Debtor proposed that the Trustee would make payments on the delinquent amount owed to the Lender as of the petition date.  During the pendency of this case, the Debtor signed a loan modification agreement to modify the original contract, reduce her regular monthly payments the Lender, to reduce the interest rate on the loan and cure any default that then existed, including any amounts left outstanding that were to be paid under section 5A of the plan.  The Bankruptcy Court approved said modification by order dated August 5, 2014 [Docket # 55].  Subsequently, the debtor fell behind on her direct payments to the Lender.

On August 26, 2015, in accordance with Fed. R. Bankr. P. 3002.1(f), the Trustee filed a Notice with the Court that stated, among other things, that he paid in full the arrearage claim of the Lender. On September 16, 2015, the Lender filed a response to the Trustee's notice, in accordance with Fed. R. Bankr. P. 3002.1(g), that stated the Lender agreed that the Trustee had paid their arrearage claim in full and that the Debtor was past due on her direct payments.  The Debtor does not disagree with the Lender's response and therefore did not file a response to the same.  In addition, the Debtor has made it known to the Trustee that she agrees that she is delinquent on her direct payments to the Lender.

The Trustee filed a Motion to Close Case without Entry of Discharge and Memorandum in Support on October 15, 2015.  The Debtor, through counsel, filed her Answer and Memorandum Brief in Support on November 2, 2015.  A hearing was conducted on December 11, 2015 at which no evidence was taken, but both the Trustee and Debtor, through their respective counsel, made oral arguments to the Bankruptcy Court.  The Court issued an opinion on January 5, 2016, which, along with other conclusions of law, states that the Trustee was seeking the incorrect relief and must seek to convert or dismiss the Debtor's case.  *In re Evans*, 543 B.R. 213 (Bankr. E.D. Va. 2016).  Accordingly, the Court afforded the Trustee the opportunity to amend his Motion and the Debtor the opportunity to file an Amended Response.  The Trustee filed his Amended Motion on January 11, 2016 and the Debtor filed her Amended Response on January 25, 2016.  The Court conducted a hearing on February 12, 2016 at which the Debtor's case was dismissed for failure to pay her direct payments to Lender.  This Appeal followed.

Argument

DIRECT PAYMENTS TO A MORTGAGE LENDER ARE NOT PAYMENTS UNDER THE PLAN

When analyzing any section of the code, the Court's analysis must begin with the plain language of the statute in question.  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).  "The plain meaning of legislation should be conclusive, except in 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters."  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989).  When looking at the plain language of 11 U.S.C. §1328(a) one can only

conclude that the term "payments under the plan" does not include direct payments made on a mortgage debt as provided under 11 U.S.C. §1322(b)(5). To conclude otherwise would clearly be at odds with the drafters' intentions and the interpretation of this statute by all courts in this Country from 1978 until the present. 11 U.S.C §1328(a) states in relevant part, "...as soon as practicable after completion by the debtor of all **payments under the plan**....the court shall grant the debtor a discharge of all debts **provided for by the plan**...except any debt (1) provided for under section 1322(b)(5)..." 11 U.S.C §1328(a) (emphasis added). These portions of this statute have remained relatively unchanged since 1978. To determine whether a discharge can be denied and a case dismissed based off of said denial, one must define the term "payments under the plan."

*The terms "payments under the plan" and "provided for by the plan" are clearly defined differently*

In *Rake v. Wade*, 508 U.S. 464 (1993), the United States Supreme Court made a clear distinction with regards to claims as at issue in this case when it stated that 11 U.S.C. §1322(b)(5) essentially splits such a claim into "payments of principal and interest on the underlying debts [that are] simply 'maintained' according to the terms of the mortgage documents...[and] arrearages as a distinct claim to be paid off within the life of the plan pursuant to repayment schedules established by the plan." *Id.* Although the statement above is helpful in determining the issue in this case, in *Rake* the Court made a further discussion on whether a direct mortgage payment listed under 11 U.S.C. §1322(b)(5) are "provided for" by the plan but no discussion of the term "payments under the plan". *Id.* As 11 U.S.C §1328(a) uses both terms, they clearly have different meanings and the remainder of the discussion in *Rake* is not relevant to the issue at hand. In addition, 11 U.S.C §1328(a) makes it clear that a debt listed in accordance with 11

U.S.C. §1322(b)(5) is provided for by the plan but not that said debts are "payments under the plan."  Given that both terms are provided under the same code section, they must be defined differently.  There is no doubt that direct payments made under 11 U.S.C. §1322(b)(5) are provided for by the plan so they cannot be payments under the plan.

*A review of other sections of title 11 and the Federal Rules of Bankruptcy Procedure reveal that "payments under the plan" are not inclusive of direct payments.*

11 U.S.C. §1322(b)(5) provides in relevant part that the plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final **payment under the plan** is due."  11 U.S.C. §1322(b)(5) (emphasis added).  When interpreting the plain meaning of this statute, it is clear that the payments with a last payment date after the payments under the plan are completed cannot be a payment under the plan.    If the drafters had intended for these payments to be included in "payments under the plan," they would have used different terminology in this code section, such as "the final payment to the trustee."  Instead, this section clearly defines a difference between payments under the plan and direct payments as there is a clear distinction between the two.  The maintenance (or direct) mortgage payments are the ones made on a secured claim.  That secured claim has a last payment that is "due after the date in which the final payment under the plan is due." *Id.*  There is clear intent by the drafters to ensure that maintenance payments are not considered payments under the plan.  Therefore, is no other possible interpretation of the distinction

made in this code section than to conclude that "payments under the plan" are not intended to include the direct payments.

In 11 U.S.C. §1322(d)(1)(C) and (d)(2) a payments under a plan may not extend "over a period that is longer that 5 years."  If direct payment on a mortgage are considered under the plan, all plans which propose to pay a claim under 11 U.S.C. §1322(b)(5) would violate section 1322(d) as the payments are for a period longer than 5 years.  The bankruptcy Court in this jurisdiction, in *In re Russell*, 458 B.R. 731 (Bankr. E.D. Va. 2010) discussed payments under the plan and 11 U.S.C. §1322.  In *Russell*, the Court stated that any payment under the plan is "subject to the five-year limit on such payments. *Id* at 739.  The Court further stated that payments do not have to be made by the trustee to be under the plan but qualifies that by stating "[i]f the plan defines the payment terms...then the payments are being made 'under' the plan." *Id*.  In the plan filed by Ms. Evans in this case, the language accompanying the paragraph in which her mortgage claim is listed states:

> 5. Mortgage Loans Secured by Real Property Constituing the Debtor(s)' Primare Residence...Curing of any existing default under 11 U.S.C. Section 1322(b)(5).  A. Debtor(s) to make regular contract payments; arrears, if any, to be paid by Trustee.  The creditors listed below will be paid by the debtor(s) **pursuant to the contract without modification**, except that arrearages, if any will be paid by the Trustee either pro rata with other secured claims or on a fixed monthly basis as indicated below..(emphasis added)

As can be seen by this language, the plan does not define the terms of the direct payments.  Therefore, as seen in *Russell* they are not payments under the plan and are not subject to the five-year limitation.

Similarly, 11 U.S.C. § 727(a)(9) states that a debtor may not receive a discharge in a chapter 7 filing if they had a prior chapter 13 filing within the previous 6 years unless

"payments under the plan in such case totaled at least (A) 100 percent of the allowed

unsecured claims in such case; or (B)(i)70 percent of such claims; and (ii) the plan was

proposed by the debtor in good faith and was the debtor's best effort." 11 U.S.C. §

727(a)(9).  It is clear that the plain meaning of "under the plan" in Section 727(a)(9) only

includes the payments to the Trustee, not direct payments.  A Bankruptcy Appellate

Panel for the Eighth Circuit interpreted this statute and in doing so stated "Whichever

way a court looks at the language, the cases are consistent that the phrase 'payments

under the plan' means either payments required by the confirmed plan to be paid to the

trustee for distribution as described in the plan, or ... payments required to be made

because of a defined percentage dividend to unsecured creditors in the specific language

of the plan." *In re Griffin*, 352 B.R. 475, 478 (2006). The Bankruptcy Appellate Panel

continued further and concluded that the "payments under the plan" under Section

727(a)(9) included payments made to the trustee and stated "...in the completed Chapter

13 case, [the debtor] paid to the trustee as "payments under the plan" far more than the

total of the allowed unsecured claims.  Section 727(a)(9), therefore, does not bar this

debtor from receiving a discharge in his Chapter 7 case." *Id*, at 482.  It is clear that

payment "under the plan" are only payments made to the trustee.

Likewise, 11 U.S.C. §1329(a)(4) states that a plan may be modified to "reduce

amounts to be paid **under the plan** by an actual amount expended by the debtor to

purchase health insurance..."  (emphasis added).  In interpreting the plain meaning of this

statute, the term "paid under the plan" cannot include direct payments, especially those to

a secured creditor, such as a mortgage company.  If this section were interpreted to

include direct payments as payments under the plan, a debtor would be entitled to reduce

their mortgage/car payment in order to purchase health insurance.  Doing so would certainly not be accepted by any Bankruptcy Court and would garner a Motion for Relief from the Automatic Stay from the mortgage/car company, which could result in the ultimate foreclosure/repossession of the collateral.  This would be a nonsensical reading of this statute and would violate 11 U.S.C. §1322(b)(2).

Fed. R. Bankr. P. 3002.1 (the "Rule") can also only be interpreted (which interpretation gives rise to this appeal) to define "payments under the plan" to exclude direct payments. The Rule states in relevant part in section (f), "Within 30 days after the debtor completes all payments **under the plan**, the trustee shall file and serve...a notice stating that the debtor has paid in full the amount required to cure any default on the claim." *Fed. R. Bankr. P. 3002.1(f).*  In the Rule, the term payments under the plan is used.  According to subsection (f), the Trustee must believe that all payments under the plan have been made before filing his Notice of Final Cure Payment.  He must do so without the independent or specific knowledge that the direct payments have been made. Thus, the term payments under the plan cannot be interpreted to include direct payments when looking at this Rule.  If it did, the Trustee would need the Lender's response to his Notice (see Fed. R. Bankr. P. 3002.1(g)) before filing said Notice. Interpreting payments under the plan to mean direct payments would render section (g) of the Rule unnecessary. The Court should construe the language in a manner which renders "no part...inoperative or superfluous, void or insignificant."  *Corley v. United States,* 556 U.S. 303, 314 (2009). The exact opposite has happened in interpreting payments under the plan to include direct payments.

In addition to all of the above instances, 11 U.S.C. §1326 defines payment and uses the term "under the plan" neither of which include direct payments.   This section states as follows:

> "(a)(1)…the debtor shall commence making payments not later than 30 days after the date of filing of the plan…in the amount- (A) proposed by the plan to the trustee; (B) scheduled in a lease of personal property directly to the lessor…; (C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property…"

*11 U.S.C. §1326(a)(1)*.  None of these stated payments to commence within 30 days of the date of filing include direct payment proposed in accordance with 11 U.S.C. §1322(b)(5).  In addition, in subsection (b) the term "under the plan" is used and clearly could not include direct payments.  This subsection states "before or at the time of each payment to creditors under the plan there shall be paid..." and then proceeds to list types of claims to be paid.  It is clear that the term under the plan does not include direct payments but that it is the payments made through the trustee to creditors.

As can be seen, there is no portion of title 11 to the U.S. Code or the Federal Rules of Bankruptcy Procedure that, using context, would cause an interpretation of "payments under the plan" to include direct payments.

## A Term Used in Different Parts of the Same Statute Has the Same Meaning

The statute that brings about this appeal is 11 U.S.C. §1328.  In subsection (b) of Section 1328, you again find the term "under the plan."  This subsection states:

> "(b) [A]t any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed **payments under the plan** only if (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable; (2) the value, as of the effective date of the plan of property actually distributed **under the plan** on account of each allowed unsecured claim is not less than the amount that would have been paid on

> such claim if the estate of the debtor had been liquidated under chapter 7
> of this title on such date"

11 U.S.C. §1328 (b) (emphasis added).  The plain language of this portion of the statute

makes it clear that the payments under the plan are not direct payments.  In order to

illustrate this, consider the following example.  Husband and Wife filed a joint Chapter

13 Petition, Schedules and Plan.  Before the plan payments were completed, the Husband

passes from this life leaving the Wife to complete the bankruptcy.  However, Wife does

not have the income to complete the bankruptcy and instead applies for a discharge under

subsection (b) for both her and Husband.  If direct payments were included in the

definition of payments under the plan, they would no longer be entitled to a discharge

under subsection (b) if Wife intends to continue making the direct payments.  The Court

would not be in a position at the time of the request to determine whether the debtor's

failure to make payments is due to something beyond the debtor's control given that wife

would not have failed to complete the payments made directly to the Mortgage company.

However, this scenario is the exact scenario that most often gives rise to a granting of a

discharge in accordance with this portion of the statute.  The intent of subsection (b) is

clearly to afford those who cannot complete (or continue) their payments under the plan

(i.e. to the trustee) due to a circumstance beyond their control.  To conclude otherwise

would be to defeat the purpose entirely of this subsection of this statute.

The plain meaning when looking at the entirety of 11 U.S.C. §1328 of the term

"under the plan" can only be payments made to the trustee in accordance with the plan

terms.

## THE COURT MAY NOT USE A NEWLY ENACTED RULE TO CHANGE A THE WELL ESTABLISHED INTERPRETATION OF A SECTION OF THE CODE

The Rule was enacted to **help** the debtor(s) to be better informed about the status of their mortgage throughout their Chapter 13.  Sections (f) and (g), which are the specific subsections that began the inquiry that gives rise to this appeal, are designed to be sure that the debtor is better informed as to the status of their mortgage payments in order for the debtor to know what to expect going forward rather than being blindsided by a foreclosure immediately after discharge.  The Court and the Trustee have used this Rule and the resulting information obtained from it to change the well established meaning of 11 U.S.C. §1328.  It is improper for them to do so.

It is well established that if there is a conflict between the Code and the Rules, the information contained in the Code is to be given preference.  11 U.S.C. §1328 has remained relatively unchanged since the revisions of 1978 and the relevant portions of subsection (a) are identical to the 1978 version of the Code.[1]  Since 1978, it has been well established and practiced throughout this Country that once the payments to the Trustee were complete the debtor(s) are/were entitled to a discharge.  Thus, with the majority Chapter 13 cases including a Mortgage Claim as allowed under 11 U.S.C. §1322(b)(5), the term payments under the plan has long been interpreted to include only the payments to the trustee and not payments made directly by the debtors to their mortgage lender.  In fact, a the Bankruptcy Court in the Eastern District of California defined payments under the plan in *In re Estrada*, 322 B.R. 149 (Bankr. E.D. Cal., 2005).  In that case, the Court allowed the debtor a discharge despite the trustee not having filed his final report because all payments under the plan had been made.  In its discussion, the Court defines

---

[1] The only change in subsection (a) from the 1978 revisions was to include a clause that all domestic support obligations are to be made as well as payments under the plan in order to obtain a discharge.

"payments under the plan" to be those payments that "provide for payment in full of all priority claims...provide for payment of the present value of [a secured creditor's] collateral... and...pay holders of unsecured claims no less than the present value of what 'would be paid on such claims if the estate of the debtor were liquidated under chapter 7...' and perhaps more if there is available disposable income." *Id at* 152.

Subsequent to the Rule being enacted, the Bankruptcy Court in the Northern District of Texas wrongly interpreted *Foster v. Heintcampf (In re Foster)*, 670 F.2d 478 (5th Cir. 1982), in order to change the well established meaning of Section 1328 in the case *In re Kessler*, 2015 Bankr. LEXIS 1889 (Bankr. N.D. Tex. June 9, 2015).  The Bankruptcy Court, in this case, relied heavily on Kessler and other similar cases in supporting its position to do the same.  In Foster, the Fifth Circuit Court of Appeals issued a ruling that was limited to 11 U.S.C §1302, a statute that has sense been repealed. The Court determined that that, despite the fact that the direct payments were being made by the debtor as a disbursing agent, the Trustee was entitled to fees with regards to those payments under 11 U.S.C §1302.  *Foster,* at 493.  The Foster case was a case concerned with denying confirmation of a plan not the ultimate discharge after completion of said plan and the court specifically stated that this was its concern.  *Id*.  The bankruptcy Courts in this case, the Kessler case and the like have wrongfully broadened the ruling in Foster to include 11 U.S.C. §1328.

The recent rulings broadening Foster can only be traced back to the enactment of the Rule.  Prior to the enactment of the Rule, it was unknown to anyone other than the debtor and the mortgage lender whether the debtor was behind on his/her/their direct payments.  The trustee, the Court and the debtor's attorney most often didn't know

whether the debtor was or was not current on post-petition direct payments.

Nevertheless, the debtor would receive a discharge.  Since the enactment of the Rule,

without a change to 11 U.S.C. §1328, debtors are regularly being denied their discharge,

their case is being dismissed or they are being required to take further action to receive

their discharge.[2]  The **wrongful** reinterpretation of 11 U.S.C. §1328(a) can only be seen

as caused by the enactment of the Rule.

The Rule was enacted to **help** debtors who, as stated above, would be blindsided

by a foreclosure shortly after completion of their plan.  The Rule has recently, with the

onslaught of cases such as this one, been turned into a Rule that ultimately **harms** the

debtor by either denying their discharge or dismissing their case.  This was clearly not the

intent of the Rule and furthers the need for the ruling to dismiss this case to be

overturned.

<u>INTERPRETING PAYMENTS UNDER THE PLAN TO MEAN DIRECT PAYMENTS
CAUSES A RESULT THAT IS IN DIRECT CONTRAVENTION OF THE INTENT OF
THE CURRENT BANKRUPTCY CODE.</u>

<u>BAPCPA's Intent Was to Decrease Repeat Filings.</u>

One of the main purposes of the 2005 Amendments to the Bankruptcy Code, often

referred to as BAPCPA, was to attempt to cut down on repeat filings.  Including direct

payments in the definition of payments under the plan is causing debtors be denied a

discharge or have their case dismissed.  This in turn is causing debtors to be forced to file

a subsequent bankruptcy where they otherwise would not have done so.  This is in direct

contravention of the intent in amending the code in 2005.

---

[2] In the Eastern District of Virginia's Norfolk and Newport News divisions I have personally seen cases carried out long past the 5 year commitment period to afford the debtor time to get a loan modification, find some other way to get their mortgage payments brought current through the plan term or convert their case to one under chapter 7.  It is only in one of these scenarios that are the debtors afforded a discharge.

<u>The Chapter 13 Discharge is Becoming More Narrow Than the Chapter 7 Discharge,</u>
<u>When the Code Clearly Aims to Do The Opposite</u>

Interpreting "payments under the plan" to include direct payments the Court is taking a broad interpretation of 11 U.S.C. §1328 and narrowing the discharged contained therein.

In 11 U.S.C. §1328(a)(1), a debt provided for by a plan in accordance with 11 U.S.C. §1322(b)(5) is excepted from the discharge. This shows and undeniable intent by the drafters to be certain that these types of debts are not considered payments under the plan that are to be considered in granting a discharge. Thus, taking the stance that the Bankruptcy Court did in this case has caused a narrowing of the discharge.

In addition, there are certain exceptions to discharge that are enumerated in 11 U.S.C. §523. These exceptions are all applicable in a Chapter 7 case, but only eight (8) of the, approximately, twenty-nine (29) exceptions are applicable in a Chapter 13 case. This is clear intent by the drafters to have the Chapter 13 discharge be far more broad than that received in a Chapter 7 case. The result of cases such as this one is to cause the debtor to not receive a discharge where they ordinarily would have in a Chapter 7 context. For example, in this case, Ms. Evans could have converted her case to one under Chapter 7 after her last plan payment and she would have received a discharge. This illustrates the clear contravention of the Code. She did not receive her chapter 13 discharge and her case was dismissed. She would have received a discharge in a Chapter 7. The Chapter 7 discharge is intended to be more narrow than one under Chapter 13. This clearly goes against the express intent that can be seen in 11 U.S.C. §§523 and 1328(a)(2).

<u>CONCLUSION</u>

Given the clear statutory language and the foregoing authorities, it is apparent that the Bankruptcy Court erred in refusing to allow Ms. Evans a discharge and dismissing her case.

WHEREFORE the Debtor/Appellant respectfully requests that this honorable Court reverse the Order of the Bankruptcy Court and reopen Ms. Evans case and allow her to receive her rightfully earned discharge.

Dated: June 21, 2016.

Respectfully Submitted,

/s/Jessica R. Casey_____
Jessica R. Casey, VSB #77849
jessica@caseylegalpc.com
Casey Legal, P.C.
11828 Canon Boulevard, Suite A
Newport News, VA 23606
(757) 596-0456
(757) 596-2999 [facsimile]
Counsel for Debtor/Appellant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of July 2016, I will electronically file the foregoing with the Clerk of Court using CM/ECF system, which will then send notification of such filing (NEF) to the following:

Kelly M. Barnhart
Counsel for Trustee/Appellee
Roussos, Glanzer & Barnhart, PLC
580 E. Main Street, Suite 300
Norfolk, VA 23510

/s/Jessica R. Casey
Jessica R. Casey, VSB #77849
jessica@caseylegalpc.com
Casey Legal, P.C.
11828 Canon Boulevard, Suite A
Newport News, VA 23606
(757) 596-0456
(757) 596-2999 [facsimile]
Counsel for Debtor/Appellant