# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
### (Newport News Division)

| | | |
|---|---|---|
| In re | : | |
| | : | |
|     MARLENE DENISE EVANS | : | Civil No. 4:16-cv-00017-RGD/RJK |
| | : | |
|     Debtor. | : | |
| | : | |
| MARLENE DENISE EVANS | : | |
| | : | On appeal from |
|     Appellant, | : | |
| | : | Bankruptcy Case No. 11-51101-SCS |
| v. | : | |
| | : | |
| R. CLINTON STACKHOUSE, JR., Trustee, | : | |
| | : | |
|     Appellee. | : | |

## REPLY BRIEF OF APPELLANT

Jessica R. Casey, VSB #77849
jessica@caseylegalpc.com
Casey Legal, P.C.
11828 Canon Boulevard, Suite A
Newport News, Virginia 23606
(757) 596-0456
(757) 596-2999 [facsimile]
Counsel for the Debtor/Appellant

TABLE OF CONTENTS

Table of Contents..................................................................................................1

Table of Cases, Statutes and Other Authorities..................................................2

REPLY ARGUMENT:...........................................................................................3

I. <u>THE DEBTOR COMPLIED WITH THE RELEVANT TERMS OF HER PLAN THAT ARE REQUIRED IN ORDER TO RECIEVE HER DISCHARGE</u>........................4

II. <u>APPELLANT DID NOT FIAL TO MAKE ALL REQUIRED PAYMENTS</u>.............12


<u>CONCLUSION</u>..................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*In Re Rodnock*, 197 B.R. 232 (Bankr. E.D. Va. 1996)..........................................................4

*Lawrence Tractor Co. v. Gregory (In Re Gregory)*, 705 F.2d 1118 (9th Cir. 1983)............5

*Rake v. Wade*, 508 U.S. 464, 113 S. Ct. 2187, 124 L Ed. 2d 424 (1993)............................5

*In re Russell*, 458 B.R. 731 (Bankr. E.D. Va. 2010)..........................................................5, 8

*Foster v. Heintcampf (In re Foster)*, 670 F.2d 478 (5th Cir. 1982)................6, 7, 10, 11, 13

*In re Perez*, 339 B.R. 385 (Bankr. S.D. Tex. 2006).............................................................7

*In re Kessler*, 2015 Bankr. LEXIS 1889 (Bankr. N.D. Tex. June 9, 2015).........................7

*In re Heinzle*, 511 B.R. 69 (Bankr. W.D. Tex. 2014)..............................................7, 10, 11

U.S. v. Freeman, 44 U.S. 556, 564, 11 L.Ed. 724, 727 (1845)...........................................9

*In re Gonzalez*, 532 B.R. 828.............................................................................................10

*In re Estrada*, 322 B.R. 149 (Bankr. E.D. Cal., 2005).......................................................10

**Constitution, Statues and Rules**

11 U.S.C §1328..............................................................................3, 5, 6, 7, 8, 9, 10, 11

Fed. R. Bankr. P. 3002.1..................................................................................4, 9, 10, 11

11 U.S.C. §1327......................................................................................................................4

11 U.S.C § 1302(e) (repealed)........................................................................................6, 11

11 U.S.C. § 1322(b)(5)........................................................................................................6, 9

11 U.S.C. § 727(a)(9)..............................................................................................................9

11 U.S.C. §1329(a)(4).............................................................................................................9

11 U.S.C. §13607(c)(6).........................................................................................................13

Appellant incorporates and reiterates all relevant facts and statements made in her Brief of Appellant.

Argument

The Appellee, in his opening remarks of his argument makes a material misstatement of what 11 U.S.C §1328 mandates that the debtor do in order to receive a discharge. *Brief of Appellee* at page 8. 11 U.S.C. §1328 states:

> (a)Subject to subsection (d), as soon as practicable after completion by the debtor of all payments **under the plan**, and in the case of a debtor who is required by a judicial administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statue that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt- (1) provided for under Section 1322(b)(5)...(d) notwithstanding any other provision of this section, a discharge granted under this section does not discharge the debtor from any debt based on an allowed claim filed under section 1305(a)(2) of this title if prior approval by the trustee of the debtor's incurring such debt was practicable and was not obtained. (emphasis added).

As can be seen, the debtor is not required to make all payments "called for" in a confirmed plan. The operative language still remains that the debtor is only required to make all payments "under the plan" not all payments "provided for" by the plan. *See Brief of Appellant at page 8*. In addition, 11 U.S.C. §1328 requires a debtor to certify (which certification would be under oath) that he/she has made any domestic support obligation payments, a payment which would be neither a payment "under the plan" nor a payment "provided for" in a plan. In addition, if the trustee is correct that all payments called for in a confirmed plan were mandated to be made in order to receive a discharge, any debtor that includes an assumption of an executory contract or a statement that he/she

will make their payments on their student loans directly in his/her plan would have to make all payments on said contract or student loan in order to receive a discharge. Neither of these types of debts are subject to inquiry before issuance of a discharge and therefore are not required to be made in order to receive a discharge as they are not payments "under the plan." Similarly, the debt which gives rise to the dismissal of this case is not a payment "under the plan." As stated in the Brief of Appellant at pages 13-15, until Fed. R. Bankr. P. 3002.1 (the "Rule") was enacted to assist/help the debtor in being more informed, there was not an inquiry into whether a debtor made his or her direct payments on his/her mortgage. This is because those direct payments are not payments under the plan and are not relevant to the issuance/non-issuance of the debtor's discharge. It is clear that this code section does not mandate that all payments "called for" by a plan be made in order to receive a discharge.

I. THE DEBTOR COMPLIED WITH THE RELEVANT TERMS OF HER PLAN THAT ARE REQUIRED IN ORDER TO RECIEVE HER DISCHARGE

While the Appellee is correct that 11 U.S.C. §1327 states that the debtor and creditors are bound by the provisions of a confirmed plan, *In Re Rodnock*, 197 B.R. 232 (Bankr. E.D. Va. 1996) makes it clear that sometimes this section conflicts with others and accordingly some provisions do not bind the parties. For example, while the plan does provide that the Appellant was to pay her direct payments to CitiFinancial "pursuant to the contract without modification," this provision of the plan does not preclude the parties to the original contract from modifying the same. In fact, the Appellant and CitiFinancial entered into an agreement approximately one year prior to the dismissal of her case by which the parties agreed to a modification of the original contract.

The Appellee further states, "what is important to the inquiry is whether the payments are called for..." *Brief of Appelle, R. Clinton Stackhouse Jr., Trustee* at page 10. In looking at Section 1328, that cannot be further from the truth. What is important to the inquiry is whether the payments are being made "under the plan." Thus, each case cited by the Appellee that uses the term "provided for" (or any form thereof) is not relevant to the inquiry here as it is well established that the direct payments are provided for by the plan. Those cases are *Lawrence Tractor Co. v. Gregory (In Re Gregory)*, 705 F.2d 1118 (9th Cir. 1983) and *Rake v. Wade*, 508 U.S. 464, 113 S. Ct. 2187, 124 L Ed. 2d 424 (1993). Both of said cases only discuss whether or not the direct payments are provided for by the plan, which is not relevant to the inquiry into what are payments "under the plan."

In looking at the plain language of Section 1328, it is clear that the operative term is "under the plan." The bankruptcy Court in this jurisdiction sought to define the term "under the plan" in *In re Russell*, 458 B.R. 731 (Bankr. E.D. Va., 2010). The relevant portion of this ruling, as quoted by the Appellee in his brief states, "If the plan defines the payment terms - and in this case it clearly does - then the payments are being made 'under' the plan." *Id* at 739. The relevant portion of the Debtor's plan states:

> **5. Mortgage Loans Secured by real Property Constituting the Debtor(s)' Primary Residence…Curing of any existing default under 11 U.S.C. Section 3122(b)(5). A. Debtor(s) to make regular contract payments; arrears, if any, to be paid by Trustee.** The creditors listed below will be paid by the debtor(s) ***pursuant to the contract without modification***, except that arrearages, if any, will be paid by the Trustee either pro rata with other secured claims or on a fixed monthly basis as indicated below…
> (emphasis added)

It is clear from the plain language of the Appellant's confirmed plan that the original contract, not the plan, defines the payment terms. Thus, according to the definition given by the bankruptcy Court, the direct payments cannot be payments "under the plan."

The Appellee additionally quotes several cases, which are not binding authority for this Court, that wrongfully state that direct payments are payments "under the plan." Each of these cases rely primarily on *Foster v. Heintcampf (In re Foster)*, 670 F.2d 478 (5th Cir. 1982) and secondarily on each case that came before the other. In *Foster*, the Court never sought to determine the meaning of payments "under the plan" as they related to 11 U.S.C. §1328, but rather the real concern of this case was 11 U.S.C. §1302(e)(repealed). Id at 490. In addition, the Court makes only a few statements that are general (i.e. they do not relate to Section 1302(e)(repealed)) which use the term "under the plan" but in doing so it seems to be interchanging the terms "provided for" and "under the plan." The Court does state affirmatively and without question that "the current mortgage payments while the case is pending must be provided for in the plan" and "Section 1322 (b)(5) provides for the curing of any default, then, only when the plan also provides for the maintenance of the current mortgage payments while the case is pending." Id at 489. Thus, the Court is reiterating what Appellant has stated a number of times, namely that the direct payments to a mortgage lender are "provided for" by a plan but are not payments "under the plan" as it relates to 11 U.S.C. §1328. The Court in *Foster* also affirmatively states that with regards to 11 U.S.C. §1302(e)(repealed) the term "under the plan" includes direct payments made by the debtor. The trouble with bringing this into the case at hand is that this interpretation of the undefined term "under the plan" was strictly limited to 11 U.S.C. § 1302(e)(repealed) and that Section of the

Code has sense been repealed and replaced. Said replacement reverses the decision in Foster and does not allow compensation to the Trustee on amounts paid directly by the debtor. Thus, it is clear that Congress did not intend for payments "under the plan" to include direct payments regardless of the code section referenced. If they had, this section would not have been repealed and replaced.

It is clear from reading *Foster* that the cases cited, to wit: *In re Perez*, 339 B.R. 385 (Bankr. S.D. Tex. 2006); *In re Kessler*, 2015 Bankr. LEXIS 1889 (Bankr. N.D. Tex. June 9, 2015); *In re Heinzle*, 511 B.R. 69 (Bankr. W.D. Tex. 2014); etc, that rely on it to interpret 11 U.S.C. §1328 do so wrongly. It is also pertinent to once again note that these cases are not binding authority on this Court. Regardless, the Appellee's remarks regarding several of these cases need be discussed further.

In the Appellee's discussion of *In re Kessler*, the key difference that the Court in Kessler failed to recognize becomes evident. The Court on a number of occasions uses the term "provided for" and "pursuant to" to be interchanged with "under the plan." As already noted, the terms "provided for" and "under" the plan cannot bear the same meaning as it is clear that differing terms used in the same code section cannot have the same definition. The Appellee also discusses the Courts decision in *In re Heinzle*, which does not apply to this case as the Court clearly stated that "Debtors' assertions fail because the case law demonstrates that mortgage payments are payments that are guided by or controlled by the plan." *Heinzel*, 511 B.R. at 79. As discussed above, mortgage payments are not guided by nor are their controlled by the plan. They are, in fact, controlled by and guided by the original contract between the parties. The Appellee then asserts that the Court in *Russell* specifically found that payments that are being made

directly to a lender were still plan payments, yet she gives no page reference for the same. Judge Mitchell made no such statements in the *Russell* opinion, but stated only that the payments are "provided for." *Id* at 735. Lastly, the Appellee states that a number of Courts have considered all of the arguments propounded in the Brief of Appellant and uniformly rejected them. *Brief of Appelle, R. Clinton Stackhouse Jr., Trustee* at page 13. Once again, this is a misstatement. While other Courts outside of this jurisdiction have considered some of the arguments contained in the Appellant's brief, Chief Judge Stephen C. St. John is the only judge in this jurisdiction (and the only judge outside of Colorado and Texas) to consider any of said arguments. In addition, the Appellant has propounded arguments which, to date, no Court has considered.

The Appellee in his brief continuously, and incorrectly, interchanges the terms "provided for" by the plan, "called for" in the plan[1] and "under the plan." It is clear from reading 11 U.S.C. §1328 that direct payments are provided for by the plan. That exact section also uses the term "under the plan" to refer to the payments required to receive a discharge. Congress did not do this unintentionally. Congress did not intend to "offer a discharge to a debtor for completing all payments provided for by the plan", but they did intend to offer a discharge to a debtor for completing all payments under the plan. *Brief of Appelle, R. Clinton Stackhouse Jr., Trustee* at page 14 (emphasis added). They used the term "under the plan" when referring to the payments to be made to receive a discharge and "provided for" when referring to direct payments being made to mortgage lenders in accordance with 11 U.S.C. §1322(b)(5). Given that this was done in the same code section, it is clear that not all payments "provided for" by a plan are payments

---

[1] This term was not found in the Bankruptcy Code and to the Appellant's knowledge is a term the Appellee is using in place of the term "provided for".

"under a plan." In addition, the decision (as discussed above) and parties such as the Appellee have made the interpretation of Section 1328 ambiguous, which calls for the need to invoke the rule of statutory construction know as *in pari martia*. Appellant agrees that before the enactment of the Rule, the language in Section 1328 was clear and unambiguous. Since the Rule's enactment, coupled with the decisions made and the challenging parties who brought about those decision, the language has become unclear and ambiguous (at least as far as those parties are concerned[2])

      In discussing the additional code sections cited by Appellant, Appellee would have this Court not consider said code sections because they do not contain the same context as Section 1328. However, each of these sections specifically use the term "under the plan" and each can only be interpreted to exclude direct payments. Appellee has not refuted said argument. All of Title 11 "relates to the same thing" (i.e. bankruptcy) and "ought to be taken into consideration in construing any one of them" U.S. v. Freeman, 44 U.S. 556, 564, 11 L.Ed. 724, 727 (1845). None of Title 11 should be construed as inapposite. 11 U.S.C. § 727(a)(9) plainly uses the term "payments under the plan" to include only payments made to the trustee. 11 U.S.C. §1329(a)(4) plainly uses the term "under the plan" to state that the debtor can modify payments "under the plan" not "proposed by the plan." Had Congress wanted to use language "proposed by" the plan it would have done so as it has done on several other occasions in several other Sections.

      The Appellee's arguments concerning the Rule unequivocally support the arguments made by Appellant with regards to said Rule. The Trustee, by certifying that

---

[2] Appellant has made it clear that the language of Section 1328 is clear and unambiguous and has had the same meaning since its enactment.

it believes that all of the payments to cure the arrears that were due to a mortgage lender as of the petition date have been satisfied may not do so unless he believes that "the debtor [has completed] all payments under the plan." This language is specifically stated in the Rule. The Notice to the mortgage lender that the cure payments have been completed is separate from and different than the trustee's belief that all payments under the plan have been completed. The Court in *Heinzle*, while ruling in an opposite way, confirms the need for the Trustee to know the Lender's response prior to filing his Notice. The Court incorrectly states that the trustee has not acknowledged that all plan payments have been made, but that is exactly what the Rule requires the Trustee to do. *Id* at 81. He is only permitted to file his Notice once "the debtor completes all payments under the plan." Fed. R. Bankr. P. 3002.1(f). Further, it is not a logical consequence of the enactment of this Rule to suddenly cause debtors to lose their discharge. If it were, all Courts in this Country would have followed suit. However, the Courts in Texas, Colorado and Eastern District of Virginia (Norfolk and Newport News divisions only) are the only Courts to do so.

      The Appellee seeks to use *In re Gonzalez*, 532 B.R. 828 as a novel case that unequivocally proves her arguments. However, *Gonzalez* is similar to all other cases as discussed above. They are relying on an incorrect use of *Foster* in order to define payments "under the plan" as it would be defined in Section 1328. In addition, Appellee states that Appellant can draw not comfort from *In re Estrada*, 322 B.R. 149 (Bankr. E.D. Cal., 2005) due to its discussion of differing Code Sections. However, this is exactly what he and other Courts seek to do by relying on *Foster* to determine the interpretation of Section 1328 when it clearly only applies to Section 1302(e) (repealed).

The Appellee attempts to assuage the fact that the Rule is being used to change an long stating interpretation of a Code Section by simply stating that they cannot simply ignore the information they are being provided. However, the Rule was enacted in 2011 and that is exactly what the Trustee and Courts did until *In re Heinzle* was decided, by wrongfully applying *Foster*, in 2014 and came to the attention of this trustee approximately a year ago. Appellant has been unable to find any case from 2011 to 2014 that contained these same facts and was dismissed for failing to pay direct payments. However, undoubtedly there are a number of cases in which the debtors were not current on their post petition direct payments. In those cases, the Trustee and the Court did ignore this information and the debtor(s) were discharged.

Although the Appellee attacks Appellants arguments that the consequences of his interpretation of Section 1328 are to cause multiple repeat filings, he does nothing to dispel said argument. The Appellant could not amend her plan within the year prior to discharge (which is when her post-petition arrearages occurred) because she did not wish to propose a plan which called for the surrender of her home. If she had attempted to file a plan with anything other than surrender, confirmation of her plan would have been denied. Appellee is aware that the Appellant failed to make her direct payments due to several of her extended family members taking up residence in her home and relying on her to support them. Thus, there was no additional income to pledge to the plan. The Appellee also incorrectly states that "payments under the plan" has, for a considerable period of time been interpreted to include direct payments to secured creditors. As seen above, this statement could not be further from the truth. The Appellee's agruments fail and even more so when he states that the clear intent of Congress is that the debtor fulfill

all obligations under a plan or comply with all terms of a confirmed plan to receive a discharge. Congress made their intent clear in writing the statute to state that a debtor is to make all payments "under the plan." They did not state fulfill all obligations. They did not state comply with all terms. Had they wanted either of the Appllee's standards to be a requirement, they would have stated the same. However, Congress did not do so. Making all "payments under the plan" is the correct price for a Chapter 13 discharge.

<u>APPELLANT DID NOT FIAL TO MAKE ALL REQUIRED PAYMENTS</u>

While Appellee correctly states that the confirmed Third Amended Plan did make a provision for the direct payments, those payments were to be made in accordance with the original contract. Accordingly, the debtor's non payment of said claim is not a material default with respect to payment of that claim. The default would only occur if the lender desired to proceed with its remedies under the contract between the parties. The lender never filed any documentation that there was a default on the loan in accordance with the contract; thus no default occurred under the plan terms.

The Appellee cites several cases on pages 25 and 26 of his Brief and finally states that the Direct Payments were required by the confirmed plan. This is again a misstatement. If this were the case, each and every case in which debtors fall behind and a Motion for Relief from Automatic Stay is filed would necessarily have to be dismissed. This would be true for all debtors regardless of whether they were delinquent on the pre-petition direct payments or current on their pre-petition direct payments. There are no doubt debtors who are current pre-petition on their direct payments, but fall behind during the course of their plan. Some of said debtors have undoubtedly been delinquent on their post-petition direct payments at the conclusion of their plan. These debtors must

list their direct payments in the same section of the plan as those who are delinquent pre-petition. Thus, if it is the case that it is a material default, all debtors, including those who are current on their direct payments pre-petition must have their cases dismissed. However, this is not the normal operation of the Trustee (to seek dismissal) or the Court (to grant dismissal). This is because the failure to make direct payments has not, until the enactment of the Rule, been interpreted to be cause for denial of discharge under Section 1328 or dismissal under Section 1307(c)(6). It again can be seen that the only link to establishing a change in the interpretation of the respective code section is the enactment of the Rule, which is entirely improper.

## CONCLUSION

Based upon the clear statutory language, the misapplication of *Foster*, the misstatements of the Appellee and the wrongful reinterpretation of a long standing Code Section, it is clear that the Appellant completed all requirements to obtain her discharge. Accordingly, the Court erred in dismissing Appellant's case.

WHEREFORE the Debtor/Appellant respectfully prays that the Order of the Bankruptcy Court be reversed and remanded to reopen the Appellant's case and allow it to proceed to a discharge, and for such further relief as this Court deems appropriate.

Dated: September 1, 2016.

                                      Respectfully Submitted,

                                      /s/Jessica R. Casey
                                      Jessica R. Casey, VSB #77849
                                      jessica@caseylegalpc.com
                                      Casey Legal, P.C.
                                      11828 Canon Boulevard, Suite A
                                      Newport News, VA 23606
                                      (757) 596-0456
                                      (757) 596-2999 [facsimile]
                                      Counsel for Debtor/Appellant


## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of September 2016, I will electronically file the foregoing with the Clerk of Court using CM/ECF system, which will then send notification of such filing (NEF) to the following:

        Kelly M. Barnhart
        Counsel for Trustee/Appellee
        Roussos, Glanzer & Barnhart, PLC
        580 E. Main Street, Suite 300
        Norfolk, VA 23510

                                      /s/Jessica R. Casey
                                      Jessica R. Casey, VSB #77849
                                      jessica@caseylegalpc.com
                                      Casey Legal, P.C.
                                      11828 Canon Boulevard, Suite A
                                      Newport News, VA 23606
                                      (757) 596-0456
                                      (757) 596-2999 [facsimile]
                                      Counsel for Debtor/Appellant