IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION



MARLENE DENISE EVANS,

     Appellant,

v.                        CIVIL NO. 4:16cv17

R. CLINTON STACKHOUSE, JR.,
     Trustee,

     Appellee.

## OPINION AND ORDER AFFIRMING DECISION OF THE BANKRUPTCY COURT

This matter comes before the Court on Marlene Denise Evans' ("Appellant" or "Debtor")

appeal from the United States Bankruptcy Court for the Eastern District of Virginia's March 7,

2016 Order Granting Trustee's Amended Motion to Approve Motion to Convert or Dismiss.

Bankruptcy Case No. 10-51101-SCS (hereinafter "Bankruptcy Proceedings"), ECF No. 86. For

the reasons set forth below, this Court **AFFIRMS** the decision of the Bankruptcy Court.

### I.    PROCEDURAL BACKGROUND

Appellant filed her Voluntary Petition ("Petition") for adjustment of her debts under

Chapter 13 of the Bankruptcy Code on June 11, 2010, and her Chapter 13 Plan on June 16, 2010.

Bankruptcy Proceedings, ECF Nos. 1, 6. On November 29, 2010, the Bankruptcy Court

confirmed her plan. Bankruptcy Proceedings, ECF No. 12.

On March 1, 2011, Appellant filed an Amended/Modified Chapter 13 Plan, Bankruptcy

Proceedings, ECF No. 23, that was rejected by the Bankruptcy Court on April 21, 2011,

Bankruptcy Proceedings, ECF No. 26. Appellant filed a Second Amended Plan on March 10,

2011, Bankruptcy Proceedings, ECF No. 31, which the Bankruptcy Court approved on May 17,

2011, Bankruptcy Proceedings, ECF No. 40. On August 5, 2014, the Bankruptcy Court further

approved a loan modification agreement that altered the original contract between Appellant and her lender, CitiFinancial, Inc. ("Lender"). Bankruptcy Proceedings, ECF No. 55. On September 24, 2014, Appellant filed a Third Amended Plan to accommodate the terms of the loan modification, Bankruptcy Proceedings, ECF Nos. 58, 59; on November 14, 2014, the Bankruptcy Court approved the Third Amended Plan, Bankruptcy Proceedings, ECF No. 60.

On August 26, 2015, R. Clinton Stackhouse, Jr. ("Appellee" or "Trustee") filed a Notice of Final Cure Payment pursuant to Fed. R. Bank. P. 3002.1(f).[1] Bankruptcy Proceedings, ECF No. 63. On September 16, 2015, the Lender filed a Response to Notice of Final Cure Payment stating that the Lender agreed that the Trustee had paid the arrearage claim in full and that Appellant was past due on her direct payments. See infra pp. 4–5. See also ECF No. 2-1, at 7. On October 15, 2015, the Trustee filed a Motion to Close Case without Entry of Discharge. Bankruptcy Proceedings, ECF No. 64. On December 11, 2015, the Bankruptcy Court held a hearing on the Motion and issued an Opinion finding that the Appellant was not entitled to a discharge because she had not completed all payments under the Chapter 13 plan but ordering the Trustee to file an Amended Motion moving for conversion or dismissal, rather than closure without discharge. In re Evans, 543 B.R. 213, 235 (Bankr. E.D. Va. 2016). The Trustee then filed an Amended Motion to Convert or Dismiss, Bankruptcy Proceedings, ECF No. 79, which the Bankruptcy Court granted on March 7, 2016, Bankruptcy Proceedings, ECF No. 86. This appeal followed. ECF No. 1.

## II.    STANDARD OF REVIEW

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The Bankruptcy Court's application of the law is reviewed de novo. However, the Bankruptcy Court's findings of fact will not be set aside unless they are clearly erroneous. In re Biondo, 180

---

[1] Fed. R. Bankr. P. Rule 3002.1(f) provides: "Within 30 days after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim."

2

F.3d 126, 134 (4th Cir. 1999). "A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (internal citations quotations omitted). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have tried the case differently." Id.

## III.    FACTUAL BACKGROUND

Both parties stipulate to the facts in this case. ECF Nos. 6, at 3; 7, at 4. See also In re Evans, 543 B.R. at 215. Accordingly, this Court finds no reason to overturn the Bankruptcy Court's findings of fact.

The facts are as follows. After Appellant filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code, Appellee was appointed Appellant's Chapter 13 trustee on June 12, 2010. As of the filing date and all relevant dates thereafter, Appellant owned her primary residence at 38 Corwin Circle, Hampton, Virginia. Appellant and Lender had entered into a pre-Petition contractual relationship in which Appellant funded the purchase of the residence pursuant to the Deed of Trust and Note ("Note") executed by the Appellant. The Note required, among other provisions, that beginning in January 2007 Appellant would remit 360 monthly payments of $1,316.56 to the Lender. ECF No. 7, at 6. The Note was secured by a lien on the residence; the property remains subject to the lien and the Appellant remains liable to the Lender under the Note. In re Evans, 543 B.R. at 217.

As discussed above, Appellant subsequently filed a series of Amended/Modified Plans. See supra pp. 1–2. Of importance to the appeal on hand, on September 26, 2014, Appellant filed a Third Amended Plan, Bankruptcy Proceedings, ECF Nos. 58, 59; on November 14, 2014, the Bankruptcy Court approved the Third Amended Plan, Bankruptcy Proceedings, ECF No. 60.

Appellant's Third Amended Plan was filed in part to accommodate Appellant's loan

modification. On May 2, 2014, Appellant had filed a Motion to Approve Loan Modification After Confirmation. Bankruptcy Proceedings, ECF No. 49. After Appellee consented to the loan modification agreement, the Bankruptcy Court entered an order on August 5, 2014 granting the Motion. Bankruptcy Proceedings, ECF No. 55. The modified loan reduced Appellant's monthly mortgage payments on her Hampton residence from $1,000 to $665.16; reduced her interest rate from 8.832% to 5.00%; and provided for a loan term of 420 months. The modified loan also brought her account into a current status by re-amortizing her arrears, resulting in a new principal balance of $163,996.34. In re Evans, 543 B.R. at 218–19.

The Third Amended Plan also provided that Appellant would remit to the Appellee: (1) nine monthly payments of $320.00, followed by (2) 42 monthly payments of $496.00, followed by (3) nine monthly payments of $107.00 ("trustee payments"). The Appellee was to remit the trustee payments, after deducting his commission, to creditors who filed claims for any amounts owed pre-Petition (including amounts owed to the Lender for pre-Petition arrearages). The plan further provided that the Appellant would continue to remit post-Petition monthly payments, as they became due, directly to the Lender pursuant to the terms of the Note ("direct payments"), without modification, except as to any arrears owed to it. Id. at 216–18. See infra p. 10.

On August 26, 2015, the Appellee issued a Notice of Final Cure Payment, pursuant to Fed. R. Bank. P. 3002.1(f), see supra n. 1, that was sent to the Lender. Bankruptcy Proceedings, ECF No. 64. Appellee paid the arrearage claim—$400.00—owed as of the Petition date to the Lender. On September 16, 2015, the Lender filed a Statement in Response to Notice of Final Cure Payment, confirming its agreement that its claim in the case had been paid in full; however, the Statement further noted that Appellant was past due on direct payments, with a balance of $6,344.08 as of September 16, 2015. In re Evans, 543 B.R. at 218–19. At hearings before the Bankruptcy Court, Appellant confirmed she remained in arrears on her direct payments on her

mortgage and advised she had fallen behind because she had suffered reductions in her income and was supporting displaced relatives who were now residing with her. She further confirmed she owed post-Petition fees to her homeowners' association totaling between $14,000 and $15,000. In re Evans, 543 B.R. at 219. See also Bankruptcy Proceedings, ECF No. 69.

Upon receipt of Appellant's confirmation of the Lender's Statement, Appellee filed the Motion to Close Case without Entry of Discharge, requesting that the Bankruptcy Court close the case without issuance of a discharge because Appellant had not completed all payments under the Chapter 13 plan and therefore was not entitled, pursuant to the terms of 11 U.S.C. § 1328, to a discharge. Bankruptcy Proceedings, ECF Nos. 64, 65. Appellant then filed an opposition to the requested relief, instead arguing that she should receive a discharge because she had made all of her trustee payments and therefore all the payments necessary for a discharge. In re Evans, 543 B.R. at 219. See also Bankruptcy Proceedings, ECF No. 68.The Bankruptcy Court then (1) denied the entry of a discharge after concluding that Appellant had failed to make all of the necessary payments under the Chapter 13 Plan that would qualify her for a discharge and (2) also held that the case could not be closed as requested by the Appellee. The Bankruptcy Court instead ordered Appellee to file an amended motion requesting conversion or dismissal of the case. Appellee then filed the Amended Motion requesting dismissal of the case without discharge, which the Bankruptcy Court granted. Bankruptcy Proceedings, ECF No. 76. This appeal followed. ECF No. 7, at 7–8.

## IV. DISCUSSION

Presently before this Court on appeal are two questions of law: first, did the Bankruptcy Court correctly find that Appellant was not entitled to a discharge pursuant to 11 U.S.C. § 1328(a) based on her failure to complete the direct payments to the Lender? Second, was dismissal of Appellant's Chapter 13 case pursuant to 11 U.S.C. § 1307 the appropriate remedy? This Court will now consider each of these issues in turn.

## A.   DENIAL OF THE DISCHARGE

### 1.   Legal Standard

Under the terms of a Chapter 13 plan, a debtor sets forth a proposed plan for repaying obligations owed as of the date of the filing of the bankruptcy case, including a repayment proposal as to any past due amounts owed to a secured lender and any payments that may become due to that lender during the course of the plan term. Once the plan has been confirmed, "the provisions of a confirmed plan bind the debtor and each creditor." 11 U.S.C. § 1327.

Following the completion of all payments under a confirmed plan, 11 U.S.C. § 1328(a) provides: "[A]s soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title . . . ." Thus, once a debtor completes all payments under the plan, Section 1328 of the Bankruptcy Code provides for—with a number of exceptions—a Chapter 13 discharge of the debts provided for by the plan.

One exception to discharge is any debt provided for under 11 U.S.C. § 1322(b)(5). 11 U.S.C. § 1328(a)(1). Under Section 1322(b)(5), certain long-term debts "on which the last payment is due after the date on which the final payment under the plan is due" cannot be discharged (for example, mortgages). The bankruptcy plan may nonetheless "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending" on any such long-term debts. 11 U.S.C. § 1322(b)(5) (emphasis added). Thus, "[Section] 1322(b)(5) requires that Debtors cure and maintain payments for long term debt. That is, Debtors may cure a pre-petition mortgage delinquency through the plan, but they must do so by staying current on their mortgage." In re Heinzle, 511 B.R. 69, 80 (Bankr. W.D. Tex. 2014). See also In re Kessler, 655 Fed. App'x 242 (5th Cir. 2016).

Presently at issue is whether the term "all payments under the plan" as found in 11 U.S.C. § 1328(a) encompasses solely the trustee payments (which would qualify Appellant for receipt of

6

a discharge) or also includes direct payments (which would preclude Appellant from receiving a discharge), particularly given that Section 1322(b)(5) makes certain long-term debts—here, the direct payments for Appellant's mortgage to the Lender—non-dischargeable.

Although the Fourth Circuit has not directly addressed this question, this District has previously noted that:

> [S]imply because payments are not being made through the trustee does not mean they are not being made 'under' the plan. If the plan defines payment terms . . . then the payments are being made 'under' the plan regardless of whether the debtor pays the creditor directly or pays through the trustee.

In re Russell, 458 B.R. 731, 739 (Bankr. E.D. Va. 2010) (citations omitted). The Bankruptcy Court for the Western District of Virginia has also noted that direct payments "are nonetheless payments 'under the Plan' in the sense that they are dealt with by the Plan . . . ." In re Hankins, 62 B.R. 831, 835 (Bankr. W.D. Va. 1986).

A number of other district courts have also concluded that direct payments to a creditor are deemed payments under the plan if they are made pursuant to the provisions or terms of a plan, or are "dealt with" by a plan. In re Hoyt-Kieckhaben, 546 B.R. 868, 871 (Bankr. D. Colo. 2016). See also In re Kessler, 2015 WL 4726794, at *2 (Bankr. N.D. Tex. June 9, 2015); In re Perez, 339 B.R. 385, 390 n. 4 (Bankr. S. D. Tex. 2006). This, in turn, begs the question: what does it mean for a Chapter 13 plan to "define" or "deal with" direct payments?

Of the circuit courts, only the Fifth Circuit has more precisely addressed this issue, holding that post-petition mortgage payments, whether direct or trustee payments, are paid "under the plan" when the plan also provides for the curing of pre-petition arrears on the debt. In re Foster, 670 F.2d 478, 486, 488–89 (5th Cir. 1982). The Fifth Circuit explained that "a plan cannot provide that the current portion of a mortgage claim will be made 'outside the plan' . . . when the arrearages on the mortgage claim are being cured under [Section] 1322(b)(5)." Id. at 488–89. The Fifth Circuit further noted:

> Section 1322(b)(5) provides for the curing of any default, then, only when the plan also provides for the maintenance of the current mortgage payments while the case is pending. Conversely, where a fully secured mortgage claim is not treated under the provisions of Section 1322(b)(5), or any other provision of Chapter 13, payments on that claim need not be made under the plan.

Id. Thus, although a Chapter 13 plan does not necessarily need to provide for curing of default on long-term debts under Section 1322(b)(5), if a plan does, the plan must also provide for maintenance of post-petition payments. As the payments that will go toward the curing of pre-petition arrears and the payments that will go toward post-petition maintenance concern the same claim, both types of payments—regardless of who the recipients of the payments are—will fall "under the plan." As the Fifth Circuit emphasized: "[W]e find no warrant in the Bankruptcy Code for labelling part of the treatment of a claim 'outside the plan' and part of it 'under the plan' where the entire treatment is that which has been made available to the debtor through the provisions of Chapter 13." Id. at 493. See also In re Heinzle, 511 B.R. at 80 ("[R]egardless how a plan is written, post-petition mortgage payments are payments made pursuant to the plan and the failure to maintain [direct] payments will result in dismissal, conversion, or denial of discharge.").

More recently, In re Kessler, 2015 WL 4726794, at *2 considered a claim made by Chapter 13 debtors similar to the one made by Appellant: that because the debtors had made all their trustee payments curing their pre-petition arrears, but had failed to complete all direct payments, the debtors were entitled to a Section 1328 discharge. In denying the discharge, the Bankruptcy Court for the Northern District of Texas applied the reasoning of In re Foster to conclude that "post-petition payments of a mortgage debt, a long-term debt, whether paid direct or through the trustee, are treated as paid under the plan when the plan also provides for the curing of pre-petition arrears on the debt." Id. The Fifth Circuit affirmed the decision, noting that In re Foster broadly decided that "post-petition payments of [Section] 1322(b)(5) debts fall under the plan when pre-petition defaults are also provided for in the plan"; accordingly, because the

8

debtors' Chapter 13 plan "included terms for curing their pre-petition mortgage arrears and provided for maintenance of post-petition payments," yet the debtors "failed to complete post-petition mortgage payments that [fell] under the plan," the debtors "[did] not qualify for discharge under the plain terms of § 1328(a), which instructs a court to grant discharge only after completion of all payments under the plan." In re Kessler, 655 Fed. App'x at 244.

### 2.   Parties' Arguments

Appellant sets forth three central arguments as to why direct payments do not constitute payments "under the plan" and, accordingly, why Appellant is entitled to a discharge. In response, Appellee sets forth a number of arguments supporting the proposition that payments "under the plan" include the direct payments, and because of Appellant's failure to pay the direct payments, Appellant was not entitled to a discharge.

### a.   The Statute

First, Appellant argues that a reading of the plain language of 11 U.S.C. § 1328(a) in which "payments under the plan" includes direct payments made on a mortgage debt is incorrect. In support of this, Appellant argues that the language of 11 U.S.C. § 1328(a) differentiates between "payments under the plan" and "debts provided for by the plan" (emphasis added). According to Appellant, because 11 U.S.C. § 1328(a) uses both terms, the terms "clearly have different meanings." ECF No. 6, at 6.

In further support of this point, Appellant argues that because her direct payments to the Lender were long-term payments provided for by 11 U.S.C. § 1322(b)(5)—due, per the plain language of Section 1322(b)(5), "after the date in which the final payment under the plan is due"—"it is clear that the payments with a last payment date after the payments under the plan are completed cannot be a payment under the plan." ECF No. 6, at 7.

Appellant also points to a number of other provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure that either (1) employ the phrase "under the plan" or (2)

9

would conflict with a reading of "under the plan" to include direct payments in order to argue that those sections further demonstrate that direct payments are not to be considered payments "under the plan."

As an example of a latter provision that would conflict with a reading of "under the plan" to include direct payments, Appellant considers 11 U.S.C. §§ 1322(d)(1)(C) and (d)(2), which provide that certain plans, if the debtor's income falls within certain income levels, may not extend "over a period that is longer than [five] years." According to Appellant, were direct payments to be considered "under the plan," "all plans which propose to pay a claim under 11 U.S.C. § 1322(b)(5) would violate [S]ection 1322(d) as the payments are for a period longer than [five] years." ECF No. 6, at 8.

As another example, appellant points to the notice requirements of Fed. R. Bankr. P. 3002.1(f), see supra n. 1. The Rule provides that "after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim." According to Appellant, the Rule provides that a trustee may only send notice after he or she believes all payments under the plan have been made, without the independent or specific knowledge that the direct payments have been completed. Accordingly, Appellant argues, "payments under the plan" cannot include direct payments because the filing of such notice would otherwise require a trustee to confirm with the lender that all direct payments had been made. However, according to Appellant, if the rule were meant to include direct payments, Section 3002.1(g) of the Rule—requiring the lender to respond to the notice—would be rendered superfluous. ECF No. 6, at 10.

Finally, Appellant also argues that a plain reading of 11 U.S.C. § 1328(a) demonstrates that she complied with the relevant terms of her plan that are required in order to receive her

discharge. In support, Appellant argues that In re Russell, 458 B.R. at 739, established that "[i]f the plan defines the payment terms . . . then the payments are being made 'under the plan.'" Appellant then looks to the language in her Bankruptcy Plan concerning her mortgage claim; the relevant language states: "The creditors listed below [that is, the Lender] will be paid by the debtor(s) [that is, Appellant] pursuant to the contract without modification, except that arrearages, if any, will be paid by the Trustee . . . ." Appellant argues that this language demonstrates that "the plan does not define the terms of the direct payments" because it simply states that the payments will be made "pursuant to the contract without modification"; rather, according to Appellant, it is the contract that defines the terms of the direct payment. Therefore, Appellant argues, per In re Russell, because the direct payments are not defined by the plan, they are not payments under the plan. ECF Nos. 6, at 8; 8, at 4–6. Appellant argues that given that she made all trustee payments, she complied with the relevant terms of her plan, qualifying her to receive a discharge.

In response to Appellant's argument that the plain language of Section 1328(a) supports the granting of a discharge, Appellee argues that the plain language in fact requires a debtor to complete "all payments under the [Chapter 13] plan." In support of this, Appellee notes that "[t]he only difference between the Trustee Payments and the Direct Payments is the disbursing agent; for the former, it is the Trustee, while for the latter, it is the Appellant. Both, however, are to be made pursuant to the terms provided for in the Plan." ECF No. 7, at 10. Thus, according to Appellee, "[i]t is immaterial who fills the role of the disbursing agent; what is important to the inquiry is whether the payments are called for in the Third Amended Plan." Id. In support of this, Appellee also points to, among other decisions, In re Foster, 670 F.2d at 488–89, in which the Fifth Circuit held that mortgage payments made by a debtor directly to the lender are still considered plan payments so long as the plan also provides for the curing of pre-petition

11

arrearages on the same mortgage debt.

Appellee argues that any consideration of other uses of the phrase "under the plan" in the Code and the Federal Rules of Bankruptcy Procedure should not be allowed for at least two reasons: (1) courts may only invoke rules of statutory construction if the statute in question is unclear or ambiguous, but the language of the statute here is clear and unambiguous; and (2) a contrary interpretation would "run afoul of the Supreme Court's conclusion that a plan provides for a claim when the plan cures the default and allows for the maintenance of regular payments on that claim"; "otherwise there would be no reason for them to be excepted in § 1328(a)(1)." ECF No. 7, at 14–15.

To support this latter proposition, Appellee looks to the Supreme Court's ruling in Rake v. Wade, 508 U.S. 464, 474 (1993), which interpreted the related phrase "provides for" in § 1328(a) to hold that "a plan 'provides for' a claim when the plan cures a default and allows for the maintenance of regular payments on that claim, as authorized by § 1322(b)(5)." Simply because a mortgage claim may be subject to § 1322(b)(5) does not meant that it is not provided for the in the plan. Otherwise, § 1328(a)(1) would not provide an exception to discharge for such debts. Rake, 508 U.S. at 475. See also ECF No. 8, at 10.

Furthermore, even if the Court considered other uses of the phrase, Appellee argues, the other uses cited by the Appellant involve differing contexts and purposes, ECF No. 7, at 15–16, or do not, in fact, conflict with other provisions of the Bankruptcy Code. Among other examples, Appellee considers Appellant's argument that because, pursuant to Fed. R. Bankr. P. 3002.1(f), a trustee must file a final cure payment notice once "the debtor completes all payments under the plan" without having received a lender's report confirming that all direct payments had been complete the phrase "under the plan" can only include trustee payments. However, Appellee notes, this exact reasoning has been rejected by other courts, such as the Bankruptcy Court for

12

the Western District of Texas, which has previously noted:

> Debtors cite the language in Rule 3002.1(f)—"after the debtor completes all payments under the plan"—as an admission by the Trustee that once she served her Notice of Final Cure Payment, she adopted the position that Debtors have made all payments under the plan. As such, Debtors maintain that the Trustee is now judicially estopped from asserting that Debtors have not made all plan payments and are subject to dismissal or denial of their discharge.

> The Trustee responds by noting that the Notice of Final Cure Payment only requires the Trustee to certify that the debtor has made all payments to cure a default on a claim; that is payments the Trustee makes to the mortgage lender to cure an arrearage. The Trustee notes that the Trustee provides no information to the mortgagee regarding post-petition mortgage payments because Debtors make the post-petition mortgage payments directly to the lender and act as the disbursing agent for the Trustee. Moreover, if the debtor is current on post-petition mortgage payments, the debtor has met the requirements of § 1322(b)(5), which requires a debtor to cure and maintain mortgage payments.

> In addition, pursuant to Rule 3002.1(g)—Response to Notice of Final Cure Payment—it is the mortgage lender, not the Trustee, who has both the information and duty to report if Debtors have failed to make their mortgage payments post-petition. The Trustee notes that Debtors have the ability under Rule 3002.1(h) to file a motion to determine that the debtor has cured the default and paid all post-petition amounts. As such, the Trustee is not taking inconsistent positions that would lead to the application of judicial estoppel. The Trustee has only certified in her Rule 3002.1(f) notice that she has made all cure payments to the mortgage lender. She cannot certify if Debtors have made all post-petition mortgage payments because she lacks personal knowledge. The Rule 3002.1(f) notice does not certify, as Debtors suggest, that the Trustee has acknowledged that all plan payments have been made, including post-petition mortgage payments. Therefore, judicial estoppel does not apply.

In re Heinzle, 511 B.R. at 80–81. See also ECF No. 8, at 17.[2]

Appellee also argues that any argument that long term debt (such as mortgages with payments scheduled to extend beyond five years) is not contemplated by the Section 1328(a) discharge and is not a "payment under the plan" is without merit. ECF No. 8, at 11. Simply because the debt may be excepted from discharge "does not mean Congress did not require a debtor to make such payments as they [became] due post-petition to obtain a discharge of the

---

[2] Furthermore, Appellant notes, because the Rule "only applies in cases in which there is a claim secured by a lien against a debtor's principal residence that is provided for in a debtor's plan, the Appellant's reliance on the rule may have actually established that the Direct Payments are, in fact, 'payments under the plan.'" Id. at 17–18.

other debts owed as of the petition date." Id. Appellee points to the Northern District of Texas's rejection of this exact argument in In re Kessler, 2015 WL 4726794, at *2 (holding that debtors were not entitled to discharge based on their failure to remit all payments required to be made to the mortgage lender, including payments that were made directly by the debtor). Furthermore, Appellee argues, if the plan includes a provision that addresses a claim, the claim is provided for in and under the plan regardless of the contemplated duration of the payment. ECF No. 8, at 12.

        b.     Interpreting 11 U.S.C. § 1328(a)

Second, Appellant argues that the Bankruptcy Court employed Fed. R. Bankr. P. 3002.1(f) to incorrectly reinterpret what Appellant argues is the previously-established interpretation of 11 U.S.C. § 1328(a). Appellant appears to argue that prior to the enactment of the Rule, discharges were regularly granted even when only the debtor knew whether he or she was current on post-petition direct payments. Now, according to Appellant, debtors are regularly being denied discharges and instead receiving dismissals because of courts' knowledge that debtors have not made all direct payments. ECF No. 6, at 15–16. Appellant argues that the Rule was enacted to help debtors who would have been "blindsided by a foreclosure shortly after the completion of their plan," but is instead now being used by courts to deny discharge—all, according to the Appellant, contrary to the intention of Rule 3002.1(f). ECF No. 6, at 13–15. It should be noted that Appellant provides little by way of support for the proposition that such was the intention of Rule 3002.1(f) or that this Rule has produced such an effect on the granting of discharges under Section 1328.

In response to Appellant's argument that the Bankruptcy Court's holding misinterprets Section 1328(a), Appellee argues that "while the inability of debtors to obtain their [C]hapter 13 discharges, after failing to keep their mortgage payments current during their cases, may be an unintended consequence of the Rule's adoption, it is, nevertheless, a logical consequence." ECF No. 7, at 19. Appellee further argues that "it is not because of the rule that debtors may be found

14

to be in noncompliance as to the terms of their confirmed plans; it is because they are not, in fact, making all of the payments that they, in their own plans, have proposed to make." Id. at 21.

       c.     The Bankruptcy Code's Intent

Third, Appellant argues that interpreting payments under the plan to mean direct payments causes a result in direct contravention of the intent of the current Bankruptcy Code. Appellant argues that one of the main purposes of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (codified at 11 U.S.C. § 101 et seq. (2005)), was to decrease the number of repeat filings, yet interpreting "under the plan" in 11 U.S.C. § 1328 to include direct payments would result in an increased number of dismissals, leading to an increased number of repeat Chapter 13 filings. ECF No. 6, at 15. Again, however, the Court notes that Appellant has provided little by way of support or citation for either the proposition that this was the intent of the Act or that such an interpretation would produce an effect running contrary to such an intent.

Appellant further argues that interpreting "payments under the plan" in this fashion also contravenes the intent of the Bankruptcy Code because Chapter 13 discharges are fashioned to be broader than Chapter 7 discharges but, according to Appellant, the Bankruptcy Court's interpretation of Section 1328(a) would make the scope of Chapter 13 discharges narrower than Chapter 7 discharges. In support of this, Appellant argues that under 11 U.S.C. § 1328(a)(1), a debt provided for by a plan in accordance with 11 U.S.C. § 1322(b)(5) is excepted from discharge, demonstrating, according to Appellant, an intent by the drafters that certain types of debt are not considered payments under the plan to be considered in granting a discharge. According to Appellant, the Bankruptcy Court's interpretation of the statue has "caused a narrowing of this discharge" by forcing debtors to have completed direct payments to receive a discharge when such discharges were actually intended to be granted regardless of whether such direct payments had been completed. ECF No. 6, at 16. Appellant also notes that certain

exceptions to discharge found in 11 U.S.C. § 523—of which there are twenty-nine, most of which are applicable to a Chapter 7 case but of which only eight are available in Chapter 13 cases—demonstrate that the drafters of the Bankruptcy Code intended that the scope of Chapter 13 discharges be broader than Chapter 7. Appellant argues, however, that the Bankruptcy Court's interpretation of "under the plan" would further narrow the scope of Chapter 13 discharges by denying a debtor a discharge he or should would ordinarily have received. ECF No. 6, at 16.

In response, Appellee notes that Appellant's argument that this interpretation of § 1328(a) is contrary to the intended purpose of the Bankruptcy Code fails for several reasons: (1) debtors who propose plans and comply with the terms of the plan do not experience the problem facing the Appellant as compliance within the terms was within Appellant's control; (2) debtors may seek to modify their plans and avoid a potential need for refiling; and (3) debtors who propose a plan to make direct payments and fail to remit such payments have additional disposable income that they are not using otherwise, which is in fact contrary to the idea that debtors pledge all disposable income one for the duration of the case, one of the purposes of the Bankruptcy Abuse Prevention and Consumer Act. ECF No. 7, at 22. (However, it should be noted that Appellee does not offer any support for the last point; upon review of the Bankruptcy Code, it appears that disposable income for Chapter 13 debtors is to be committed to unsecured claims rather than secured claims (such as mortgages). 11 U.S.C. § 1325(b)(1)(B) and (2). Accordingly, the Court disregards Appellee's third argument.) Thus, Appellee argues that any argument that the denial of discharge would lead to a result contrary to the argued intention of the Bankruptcy Code and Rule 3002.1(f) "ignores the plain language of the Bankruptcy Code and the failure of the Appellant to satisfy the obligations placed upon her by the confirmed Third Amended Plan," which Appellant proposed herself. Appellee further argues that had Appellant known of her inability to perform under the Third Amended Plan, Appellant could have

16

proposed a new plan "to address the claim of the Lender in some other fashion." ECF No. 8, at 13.

Similarly, rather than narrowing the scope of a discharge in Chapter 13, Appellee argues that such a reading merely enforces the Bankruptcy Code as written. Id. at 23. Instead, it is granting the discharge that would produce a contrary result as it would have the trustee and bankruptcy court "give their imprimatur of approval to the Appellant's failure to perform the terms of her confirmed plan . . . . It is up to Congress, not the bankruptcy court[,] to adjust the conditions required to . . . obtain a [C]hapter 13 discharge." Id.

### 3.   Analysis

#### a.   The Plain Language of the Statute

The Court's analysis begins with interpretation of the plain language of the statute at issue. Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004). A court should construe the language in a manner giving effect to all provisions "so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 566 U.S. 303, 314 (2009) (internal quotations omitted). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.'" United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)).

As noted above, Section 1328(a) provides:

> Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title except any debt—
>
> (1) provided for under section 1322(b)(5) . . .

(emphasis added).

The plain language of Section 1328(a) makes clear that a court shall grant discharge

"after completion by the debtor of <u>all payments under the plan</u>" (emphasis added). It is apparent to the Court that the phrase "all payments under the plan" would encompass both direct and trustee payments. This Court agrees with the Bankruptcy Court that had Congress intended that discharge only be granted after completion by the debtor of <u>some</u> payments under a confirmed plan, Congress could have easily included such language limiting the payments that needed to be completed prior to receiving a discharge. <u>See</u> <u>In re Evans</u>, 543 B.R. at 221. Rather, by drafting the language in this fashion, Congress made clear that this Court should grant a discharge only after completion of <u>all</u> of the payments under the Bankruptcy Court-confirmed plan. Thus, the plain language of the legislation is conclusive.

Furthermore, as the Bankruptcy Court for the Northern District of Texas noted in <u>In re Kessler</u>, it is entirely possible for direct payments to be "under the plan"—and not, as Appellant suggests, outside it:

> Under one interpretation [of "outside the plan," supported by the debtors], the debt is treated under the plan but the debtors act as the "disbursing agent" and make payments "directly to the creditors rather than through the standing trustee." . . . The alternative meaning is that "outside the plan" refers to payments of debts not treated by the terms of the plan. . . . The first construction of the phrase reflects the way [the direct] payments were provided for here. The Fifth Circuit in <u>Foster</u> held that payments so made are indeed made <u>under the plan</u>. . . . It follows, then, that a payment truly "outside the plan" refers to a payment on a debt that is <u>not</u> provided for by the terms of the plan. A current, fully secured claim may, for example, be left unaffected and thus excluded from the plan. . . . Such claim would then be paid "outside the plan." When a debtor chooses to exclude a secured debt from treatment under the plan, "the lien securing [such debt] merely passes through the bankruptcy case unaffected"; as a consequence, it will not be discharged. . . . Though the payments were to go directly from [the debtors] to [the lender], the debt was still provided for by the terms of the Plan. Such direct mortgage payments, if made, were payments "under the plan."

2015 WL 4726794, at *2–3 (internal citations omitted). <u>Kessler</u> went on to note that although a debtor had the option to make payments for his or her residential mortgage debt "under the plan or outside the plan," a debtor would lose the option to make payments "truly outside the plan if the plan provides for the curing a default under the mortgage." <u>Id.</u> at *3–*4. Rather, if an

arrearage was to be cured under Section 1322(b)(5), the direct payments would necessarily be provided for in the plan. Id. Kessler went on to explain that "[g]iven the restriction of [Section] 1322(b)(5) that a plan providing for the curing of arrears must also provide for the regular payments, it follows that when a plan provides for the curing of arrears on a mortgage and the debtor makes direct payments on the mortgage during the plan, such payments are under the plan. . . ." Id. Furthermore, "[b]ecause the debtors treated [their lender] in accordance with [Section] 1322(b)(5) . . . [their payments to their lender], whether through the trustee or direct, were made under their Plan." Id. As "Section 1328(a) directs the Court to grant a discharge upon completion of all payments under the Plan. . . . The [debtors] did not complete all payments under the Plan; the Court cannot grant them discharges." Id.

This Court agrees with this reasoning. Section 1322(b)(5) provides that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due" after the deadline for a final payment for the plan (emphasis added). Thus, as noted previously, see supra p. 8, although a Chapter 13 plan does not necessarily need to provide for curing of default on long-term debts under Section 1322(b)(5), if a plan does, the plan must also provide for maintenance of post-petition payments. As the payments that will go toward the curing of pre-petition arrears and the payments that will go toward post-petition maintenance concern the same claim, both types of payments—regardless of who the recipients of the payments are—will fall "under the plan."

Given that the plain language of the statute is clear, this Court agrees with the Bankruptcy Court and declines to consider the uses of the phrase elsewhere in the Bankruptcy Code or Rules. See In re Evans, 543 B.R. at 221.

In addition, the Court also notes that such a reading of the statute would not produce a

result at odds with other provisions of the Bankruptcy Code. For example, with respect to Appellant's claim that Section (g) of Rule 3002.1—providing for a lender's response to a trustee's Notice of Final Cure Payment—would be rendered superfluous by Appellee's reading, this Court notes that Section (g) in fact provides the lender the opportunity to rebut the claim that all payments under the plan have been made by including in its response the information that the debtor has not completed direct payments. Thus, rather than assuming Rule 3002.1(f) requires a trustee to have knowledge of the completion of both the trustee and direct payments, Sections (f) and (g) establish together that the trustee only need have knowledge of the completion of trustee payments as the lender will have its own opportunity to respond pursuant to Section (g).

Furthermore, with respect to Appellant's claim that the trustee would be filing inconsistent positions by submitting a Notice of File Cure Payment without confirming all direct payments, this Court notes that this argument has already been rejected by other courts. The Heinzle court concluded that a trustee would not be taking inconsistent positions by filing a Notice of Final Cure Payment: "The Trustee has only certified in her Rule 3002.1(f) notice that she has made all cure payments to the mortgage lender. She cannot certify if Debtors have made all post-petition mortgage payments because she lacks personal knowledge. The . . . notice does not certify . . . that the Trustee has acknowledged that all plan payments have been made, including post-petition mortgage payments," only that all trustee payments have been made. 511 B.R. at 81. The Court agrees.

With respect to Appellant's argument that since long-term debts, such as her residential mortgage, are outside the scope of the plan because they extend beyond five years, this Court notes that the only case that Appellant cites for the proposition that a payment under the plan is subject to the five-year limit is In re Russell, 458 B.R. 731. ECF No. 6, at 8. However, it should be noted that the types of payments in Russell that were subject to the five-year limitation of 11

U.S.C. § 1322(d) were modifiable debts on non-residential properties. In re Russell, 458 B.R. at 738–39. However, the Bankruptcy Court for the Eastern District of Virginia in that case went on to note that long-term, non-modifiable debts on residential properties—that is, those provided for by Section 1322(b)(5)—were not subject to such a limitation: "Section 1322(b)(5) allows a debtor to take advantage of a repayment period that exceeds the terms of the plan. To do so . . . the debtor must (except for curing defaults) pay the debt according to its original terms" pursuant to the plain language of Section 1322(b)(5). Id. at 738–39. Thus, Appellant's citation of Russell is, in this context, inapposite. Accordingly, this Court agrees with the Bankruptcy Court's assessment that simply because "Congress requires a debtor to make all payments as they come due post[-]petition to a creditor whose claim is not subject to the discharge . . . does not produce a result at odds with the rest of the Bankruptcy Code." In re Evans, 543 B.R. at 227.

Appellant also argues that she complied with the relevant terms of her plan that are required in order to receive her discharge; because the plan stipulated that the Lender would be paid by the Appellant "pursuant to the contract without modification" but did not further specify the terms of the direct payment, the direct payments were not defined by the plan so as to make them payments under the plan. See supra pp. 10–11. However, as was noted by the Bankruptcy Court, "existing precedent confirms that a payment is considered to be part of the plan once it is mentioned within the plan as one of the duties the debtor is bound to fulfill upon confirmation." In re Evans, 543 B.R. at 231. As the Bankruptcy Court for the Western District of Texas noted in In re Kessler, 2015 WL 4726794, at *3 (internal citations and quotations omitted) in response to debtors' arguments that because the plan did not specifically define the terms of the direct payments:

> Any payment made in accordance with the provisions of a chapter 13 plan is a payment under the plan; and a debt is provided for under the plan so long as a provision treats it. . . . To provide for a claim under § 1328(a), a plan need only make a provision for it, i.e., deal with or refer to it.

21

And, as the Bankruptcy Court also noted, the language of the provisions in the Chapter 13 plans for the direct payments on the mortgage debt differed little as between the Kesslers and Appellant. Where the Kesslers' mortgage debt was to be paid to the lender "in accordance with the terms of their agreement," Appellant's was to be made to the Lender "pursuant to the contract without modification." In re Evans, 543 B.R. at 232. Thus, insofar as the direct payments were dealt with in the Chapter 13 plan, such payments constitute payments under the plan.

In further support of this conclusion, this Court returns to the decisions that have addressed how a Chapter 13 plan defines or provides for direct payments. These cases altogether conclude that if the confirmed plan provides for curing of pre-petition arrearages by payments to the trustee and direct payments for post-petition debts to the mortgage holder, the direct payments are necessarily under the Chapter 13 plan because they address the same debt as the trustee payments. For example, the Fifth Circuit recently upheld a dismissal of a Chapter 13 plan that provided both for pre- and post-petition mortgage payments. In doing so, the Fifth Circuit emphasized In re Foster's applicability, confirming that post-petition mortgage payments, whether paid directly or through a trustee, are paid 'under the plan' when the plan also provides for the curing of pre-petition arrears on the debt." In re Kessler, 655 Fed. App'x at 242 (5th Cir. 2016) (internal citations omitted). The Fifth Circuit noted that "both the payments toward curing pre-petition mortgage arrears and the post-petition maintenance payments fall under a Chapter 13 plan because both payments concern the same claim." Id. As the appellants in that case had also failed to make post-petition mortgage payments that fell under the plan, they did not qualify for a discharge under Section 1328(a). Id. Thus, a failure to pay post-petition direct payments constitutes a failure to comply with the relevant terms of a Chapter 13 plan that are necessary to receive a discharge.

b.     Previously Established Interpretations of Section 1328

Appellant argues that the Bankruptcy Court employed Fed. R. Bankr. P. 3002.1(f) to incorrectly reinterpret what Appellant argues is the previously-established interpretation of 11 U.S.C. § 1328. In support of this contention, Appellant argues that the Rule was "enacted to help debtors who . . . would be blindsided by a foreclosure shortly after completion of their plan" by, presumably, informing them of the status of their post-petition payments. ECF No. 6, at 15. Appellant further appears to argue that prior to the enactment of the Rule, discharges were regularly granted even when only the debtor knew whether he or she was current on post-petition direct payments. Now, according to Appellant, debtors are regularly being denied their discharge and receiving dismissals because of courts' knowledge that debtors have not made all direct payments. Id. at 13–15. It should be noted that Appellant provides no support for this overall proposition.

Furthermore, the only case that Appellant cites as an example of the pre-rule case law (which apparently "established . . . that once the payments to the Trustee were complete the debtor(s) are/were entitled to a discharge," ECF No. 6, at 13) is inapposite in this context as it concerns a discharge if the trustee had not yet filed a final report and account. The Bankruptcy Court in In re Estrada, 322 B.R. 149, 151–52 (Bankr. E.D. Cal. 2005) granted the debtor a discharge despite the trustee not having filed his final report only because "the debtor had made the necessary plan payments but the trustee failed to disburse them in accordance with the plan." Thus, the only reason the trustee had not filed his final report was because he was attempting to correct his failure to disburse the payments in accordance with the plan. Accordingly, in Estrada, "even without the final report and account . . . it is clear that all plan payments have been made by the debtors and were sufficient to fund the dividends promised by the plan." Id. at 152. However, as Appellee points out, it is unclear whether the issue here—whether the plan payments included direct payments—was under consideration in Estrada. Accordingly, Estrada

23

is not relevant to the case at hand.

Furthermore, the Court notes that even if there appears to have been "a recent trend of lenders objecting to discharge at the conclusion of a Chapter 13 case because a debtor has failed to make post-petition mortgage payments," In re Diggins, 2016 WL 7396699, at *1 (Bankr. D. Colo. Dec. 21, 2016), the result is not because of an incorrect reinterpretation of Section 1328(a) in light of the Rule. Rather, such results are a collateral effect of the Rule, stemming from exposure of debtors' failure to complete direct payments. This Court also agrees with the Bankruptcy Court's related assessment of Appellant's argument before the Bankruptcy Court that the denial of the discharge would not help her: such an argument is "unavailing in light of the clear intent of Congress in conditioning the receipt of a Chapter 13 discharge on the fulfillment of all of the obligations set forth in the plan." In re Evans, 543 B.R. at 223.

In addition the Bankruptcy Court for the District of Colorado has previously noted that even where a trustee has received Rule 3002.1 Notice that the debtors have not completed their payments, yet the trustee nonetheless requests a Section 1328 discharge, the trustee's request for a discharge is "not appropriate . . . after having received notice of a very substantial default in post-petition payments to [the lender] under the Debtors' confirmed plan." In re Gonzalez, 532 B.R. 828, 832–33 (Bankr. D. Colo. 2015). This Court agrees—even if the Trustee were to request a discharge following notification of a default on direct payments, it would be inappropriate, per the plain language of Section 1328(a), for the Trustee to request or the Court to grant a discharge.

Thus, given (1) that Appellant offers no or irrelevant sources in support of the proposition that the application of Rule 3002.1(f) has misinterpreted Section 1328(a) and is contrary to the intent of the Rule; (2) that any resulting denial of discharge stems from the collateral exposure of debtors' failure to complete direct payments rather than a misinterpretation of Section 1328(a) or

a misapplication of Rule 3002.1(f); and (3) that, even if the Trustee were to request a discharge upon knowledge of Appellant's failure to complete direct payments, courts have found such requests inappropriate, this Court finds Appellant's arguments in this respect unpersuasive.

           c.       Contravention of the Intent of the Bankruptcy Code

Appellant argues that interpreting payments under the plan to mean direct payments causes a result in direct contravention of the intent of the current Bankruptcy Code. Appellant argues that one of the main purposes of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 was to decrease the number of repeat filings, yet interpreting "under the plan" in 11 U.S.C. § 1328 to include direct payments would increase the number of subsequent filings. ECF No. 6, at 15.

However, finding that a Chapter 13 discharge is only permitted when all payments contemplated in a confirmed plan are made does not contravene the Bankruptcy Code. As other courts have noted:

> Congressional intent . . . holds that Chapter 13 debtors are afforded flexibility in proposing their plans, including making post-petition mortgage payments directly to their mortgage lender. In doing so, Debtors are then required to make their post-petition mortgage payments as well as their plan payments to the Trustee, all as payments pursuant to the plan.

In re Heinzle, 511 B.R. 69 at 83. As Appellee argues, such flexibility means both that "debtors who propose plans and comply with the terms of their plans will not experience the problem facing Appellant and that "debtors, who know whether they are complying with the terms of the plan, may seek to modify their plans, if appropriate, before matters reach a crisis stage . . . ." Furthermore, Debtor's proposed reading would contravene the purposes of the Bankruptcy Code recognized by the Supreme Court in Wade, 508 U.S. 464, which determined, in assessing related sections of Chapter 13, that "§ 1328(a) unmistakably contemplates that a plan 'provides for' a claim when the plan cures a default and allows for the maintenance of regular payments on that claim, as authorized by § 1322(b)(5)." Id. at 474. Otherwise, if claims subject to § 1322(b)(5)

were not provided for by the plan, "there would be no reason to make an exception for them in §

1328(a)(1)." Id. at 475.

Accordingly, this Court finds that the Bankruptcy Court properly concluded that

Appellant's direct payments fall "under the plan," per the terms of 11 U.S.C. § 1328(a), and that

Appellant's failure to complete her direct payments render Appellant ineligible to receive a

discharge under Section 1328(a).

### B.   DISMISSAL OF THE CASE

The Bankruptcy Court properly dismissed the case based upon Appellant's failure to

make all of the required payments due under the confirmed plan.

#### 1.   Legal Standard

11 U.S.C. § 1307(c) provides three ways to conclude a Chapter 13 case:

> Upon the request of a party in interest . . . and after notice and a hearing, the court
> may convert a case under this chapter to a case under chapter 7 of this title, or
> may dismiss a case under this chapter, whichever is in the best interests of the
> creditors and the estate, for cause, including –

> (6) material default by the debtor with respect to a term of a confirmed plan[.]

See also In re Leavitt, 171 F.3d 1219, 1223 (9th Cir. 1999) (noting that the three methods of

concluding a Chapter 13 case include "discharge pursuant to § 1328, conversion to a Chapter 7

cases pursuant to § 1307(c) or dismissal of a Chapter 13 cases 'for cause' under § 1307(c)").

Although the issue has not been widely addressed, a number of courts have concluded

that where a Chapter 13 plan includes direct mortgage payments to a lender, yet the debtor fails

to complete such payments, the "failure to make the direct payments is a material default of the

confirmed plan." In re Tumblson, 2016 WL 889772, at *1 (Bankr. E.D. Okla. March 8, 2016).

See also In re Formaneck, 534 B.R. 29, 33 (Bankr. D. Colo. 2015) (holding that the debtor's

failure to complete direct payments to the lender constituted a material default and that dismissal

was appropriate pursuant to Section 1307(c)(6)).

Where there has been material default, "dismissal or conversion is not automatic, but rather a matter of the Court's discretion." In re Formaneck, 534 B.R. at 32 (internal citations omitted).[3] However, as the Bankruptcy Court noted, relatively few courts have addressed the issue of whether dismissal is the appropriate remedy in cases where the debtor has failed to complete direct payments. For example, rather than denying the debtors' discharge, the Heinzle court granted the debtors fourteen days within which to convert their case to a Chapter 7 one, with the condition that the debtors' failure to convert would result in a dismissal. In re Heinzle, 511 B.R. at 83. See also In re Hoyt-Kieckhaben, 546 B.R. at 874 (noting that, pursuant to the plain language of Section 1307(c)(6)—that is, "material default by the debtor with respect to a term of a confirmed plan"—conversion or dismissal was the appropriate remedy); In re Ramos, 540 B.R. 580, 596 (Bankr. N.D. Tex. 2015) (granting debtors who had petitioned for a discharge but failed to complete direct payments under Chapter 13 plan ten days to convert their plan to a Chapter 7 one or face dismissal without prejudice).

Nonetheless, as noted above, a number of Bankruptcy Courts—including those for the District of Colorado and Eastern District of Oklahoma—have concluded that, following material default resulting from debtors' failure to complete direct payments, dismissal is the appropriate remedy when the debtor has not requested or objects to conversion to Chapter 7. The Bankruptcy Court for the District of Colorado recently concluded—following the debtor's material default of the terms of the Chapter 13 plan—that because "the Trustee seeks only dismissal of the case, and the Debtors did not request conversion," "the Court finds the most appropriate way to prevent harm to all creditors is to dismiss the case." In re Formaneck, 534 B.R. at 35. The Formaneck court further reasoned that "[t]he Debtors cannot obtain a discharge of their debts in Chapter 13,

---

[3] The Bankruptcy Court for the District of Colorado also recently took note of a number of cases in its district in which the bankruptcy courts had granted debtors' requests to convert to Chapter 7 after either the debtor had requested conversion to Chapter 7 and/or the court had determined it was in the best interests of the creditors to convert to Chapter 7. In re Higgins, 2016 WL 7396699, at *2–*4 (Bankr. D. Colo. December 21, 2016).

and rewarding the Debtors in Chapter 7 [through conversion] for their failure to comply with the Confirmed Plan and Bankruptcy Code [would be] inappropriate." Id. As neither discharge nor conversion to Chapter 7 was an available and/or appropriate remedy, "dismissal is in the best interests of all creditors and the estate due to the material default of the Confirmed Plan evidenced by repeated missed post-petition payments to [the lender]." Id. The Bankruptcy Court for the Eastern District of Oklahoma recently similarly concluded—after finding that the "Debtor's failure to make direct payments on her home mortgage to [the lender] constitutes a material default"—that because "[t]he Trustee seeks dismissal and the Debtor has not requested conversion to chapter 7," dismissal was the appropriate form of relief. In re Tumblson, 2016 WL 889772, at *2.

Furthermore, the bankruptcy courts that concluded that either dismissal or conversion—not discharge—were the appropriate available forms of closure following material default conditioned the granting of additional time to convert to a Chapter 7 case on the understanding that failure to convert would result in dismissal. Thus, the existing case law appears to indicate that where conversion is not requested by the debtor or does not occur after being ordered by the court, dismissal remains the appropriate form of closure. See In re Ramos, 540 B.R. 580 at 596 (granting debtors who had petitioned for a discharge but failed to complete direct payments under Chapter 13 plan ten days to convert their plan to a Chapter 7 one or face dismissal without prejudice); In re Heinzle, 511 B.R. at 83 (granting the debtors fourteen days within which to convert their case to a Chapter 7 one, with the condition that the debtors' failure to convert would result in a dismissal).

### 2.  Parties' Arguments

Appellant argues that Appellant did not fail to make all required payments, and thus no material default occurred. Appellant notes that although Appellee "correctly states that the confirmed Third Amended Plan did make a provision for the direct payments, those payments

28

were to be made in accordance with the original contract"; as a result, Appellant's failure to complete direct payments "is not a material default with respect to payment of that claim." ECF No. 8, at 12. In support of this, Appellant argues that a material default would only occur if the Lender "desired to proceed with its remedies under the contract between the parties" for Appellant's failure to complete direct payments. As the Lender never filed any such documentation, no default occurred under the plan terms. Id. Otherwise, Appellant argues, every debtor who falls behind on direct payments would necessarily have to be dismissed. Id.

Appellee argues that because Appellant defaulted with respect to a material term of the plan, either conversion to Chapter 7 or dismissal is the appropriate remedy. As Appellant has made clear that she does not wish to convert to Chapter 7, Appellee argues, the appropriate conclusion to Appellant's case is dismissal. ECF No. 7, at 23. Accordingly, Appellee cites three cases from the Western District of Texas, the Northern District of Texas, and the Eastern District of Oklahoma for two propositions. ECF No. 7, at 24–25. First, where there has been material default of a term of a Chapter 13 plan, dismissal or conversion to Chapter 7 are the appropriate remedies. See In re Formaneck, 534 B.R. at 35 (finding that failure to remit payments to the mortgage lender, as set forth in the terms of the confirmed plan, constituted material default and that dismissal was appropriate pursuant to § 1307(c)(6), which provides that after a material default under the terms of a confirmed plan, dismissal or conversation is appropriate); In re Ramos, 540 B.R. 580, 596 (Bankr. N.D. Tex. 2015) (granting debtors who had petitioned for a discharge but failed to complete direct payments under Chapter 13 plan ten days to convert their plan to a Chapter 7 one or face dismissal without prejudice). Second, where the debtor does not request conversion, dismissal is the only remaining appropriate remedy. See In re Tumblson, 2016 WL 889772, at *2 (finding that dismissal was the appropriate remedy where the debtor did not seek to convert the case but had materially defaulted on the Chapter 13 plan). Appellee thus

argues that, based on Appellant's stipulated failure to remit all Direct Payments due to the Lender and corresponding material default as contemplated by 11 U.S.C. § 1307(c)(6), the only appropriate remedy available is either conversion or dismissal. As Appellant has indicated no desire to seek conversion, dismissal is the appropriate remedy. ECF No. 7, at 25.

### 3.    Analysis

The Court agrees with the reasoning presented by the bankruptcy courts in In re Fomaneck and In re Tumblson: Appellant's failure to complete the direct payments to the Lender constitutes a material default of the terms of the confirmed plan.

Appellant argues that Appellant's non-payment of the claim is not a material default, contending that a material default would only occur if the lender desired to proceed with its remedies under the contract between the parties. According to Appellant, because the lender never filed any such documentation, no default occurred under the plan terms. However, as has been discussed, simply because the lender has not filed such documentation does not mean that Appellant's non-payment of the claim is not a material default. Other courts have found that failure to provide post-petition direct payments that were contemplated by a confirmed Chapter 13 plan constitutes default of a material term of the confirmed plan and thus warrants denial of a discharge. This Court agrees. Otherwise, granting a discharge when Appellant is ineligible for one would inappropriately reward Appellant for her failure to abide by the terms of the Plan. See In re Fomaneck, 534 B.R. at 35.

As the Appellant has failed to successfully complete the direct payments according to the terms of the plan, see supra IV.A, Appellant has materially defaulted and is thus ineligible for a discharge under 11 U.S.C. § 1328(a). Thus, the only remedies available to the Appellant under 11 U.S.C. § 1307 are either conversion or dismissal. When neither discharge nor conversion to Chapter 7 is an available and/or appropriate remedy, "dismissal is in the best interests of all creditors and the estate due to the material default of the Confirmed Plan evidenced by repeated

missed post-petition payments to [the lender]." In re Formaneck, 534 B.R. at 35. As (1) Appellee moved for closure of the case without entry of discharge; (2) Appellant does not wish to convert the case to a Chapter 7 case, Bankruptcy Proceedings, ECF No. 7, at 25; and (3) this Court agrees with the Bankruptcy Court's assessment that dismissal is in the best interests of the debtor's estate and the creditors, Bankruptcy Proceedings, ECF No. 97, at 3, this Court finds that dismissal pursuant to 11 U.S.C. § 1307(c) is the appropriate conclusion to this case.

## V.   CONCLUSION

For the reasons set forth herein, this Court **AFFIRMS** the decision of the Bankruptcy Court.

If Appellant wishes to appeal this decision, she may do so as a matter of right within sixty (60) days from the entry of this Order.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED**.

Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
January 13, 2017